G. B. ODOM *v.* SANFORD & TREADWAY *et al.*\*

(*Knoxville.* September Term, 1927.)

Opinion filed, December 3, 1927.

1. INDEPENDENT CONTRACTOR. EMPLOYER AND EM-
PLOYEE.

An independent contractor is one who contracts to do a piece of
work according to his own methods and without being subject
to the control of his employer, except as to the result of the
work, and who has the right to employ and direct the action of the
workmen independent of his employer, and free from any superior
authority in the employer to say how the specified work shall
be done, or what the laborers shall do as the work progresses; one
who undertakes to produce a given result without being in any
way controlled as to the methods by which he attains that re-
sult. (Post, p. 206.)

Citing: 31 C. J., —— 473, 14 R. C. L., p. 67.

2. INDEPENDENT CONTRACTOR. EVIDENCE.

Each case involving the question of whether or not one is an em-
ployee of an independent contractor must depend on its own facts
since ordinarily no one feature of the relation is determinative
but all must be considered together. (Post, p. 207.)

3. INDEPENDENT CONTRACTOR. QUESTION OF FACT.

Ordinarily the question as to whether the relation of employer and
employee or contractor and contractee exists is one of fact. (Post,
p. 207.)

4. INDEPENDENT CONTRACTOR. EMPLOYER AND EM-
PLOYEE. MASTER AND SERVANT.

Reservation of the power to terminate the work when in the discre-
tion of the engineer the work is not progressing satisfactorily,
the right to exercise general supervision and inspect the work as

---

\*On right and extent of review of findings of commission under
Workmen's Compensation Law, see annotation in L. R. A., 1916A,
pp. 178, 266; L. R. A., 1917D, 186; 30 A. L. R., 1277; 28 R. C. L., 827;
3 R. C. L. Supp., 1600; 4 R. C. L. Supp., 1872; 5 R. C. L. Supp., 1581;
6 R. C. L. Supp., 1766.

it progresses, nor the right to enforce forfeitures, will change the relation to that of master and servant. (Post, p. 211.)

Citing: Railroad v. Cheatham, 118 Tenn. (10 Cates), 170; Casement v. Brown, 148 U. S., 622, 13 Sup. Ct., 672, 37 L. Ed., 582; 3 Words & Phrases, First Series, 2074; Foster v. City of Chicago, 64 N. E., 322, 323, 197 Ill., 264.

5. INDEPENDENT CONTRACTOR. MASTER AND SERVANT. EMPLOYER AND EMPLOYEE.

Where the employer keeps a foreman on the ground practically all the time, shifting men from place to place, and designates the kind of timber to be cut as its trade requires, the relation of master and servant exists. (Post, p. 213.)

Citing: Finley v. Keisling, 151 Tenn. (24 Thomp.), 464.

6. INDEPENDENT CONTRACTOR. EMPLOYER AND EMPLOYEE.

Where the owner exercises control over the means and methods by which the contractor performs the work, the relation of employer and employee exists. (Post, p. 214.)

7. INDEPENDENT CONTRACTOR. EMPLOYER AND EMPLOYEE.

The owner can exercise direction and control of the work as to the results without destroying the independence of the contract. (Post, p. 214.)

8. WORKMEN'S COMPENSATION. INDEPENDENT CONTRACTOR. EMPLOYER AND EMPLOYEE.

The Workmen's Compensation Act cannot be invoked by an employee of one who is neither "principal, intermediate or subcontractor." (Post, p. 215.)

Citing: Siskin v. Johnson, 151 Tenn. (24 Thomp.), 93; Act 1919, ch. 123, sec. 15.

9. WORKMEN'S COMPENSATION. EMPLOYER AND EMPLOYEE. NOTICE.

Recovery cannot be had under the Workmen's Compensation Act unless the required notice has been given. (Post, p. 215.)

10. APPEAL. DECREE.

Where it does not appear that a cause was ever put at issue as to one of several defendants, and the record does not show that any

decree was asked against him in the trial court, no decree can be entered against him in this court.   (Post, p. 215.)

---

*Headnotes 1. Workmen's Compensation Acts, C. J., section 144; 2. Workmen's Compensation Acts, C. J., section 42; 3. Workmen's Compensation Acts, C. J., section 147 (Anno).

---

### FROM CARTER.

---

Appeal from the Chancery Court of Carter County.— HON. JOS. A. CALDWELL, Special Chancellor.

SELLS, SIMMONDS & BOWMAN, for complainant.

LEE F. MILLER, for defendant.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This suit was instituted under the Workmen's Compensation Statute.

The Chancellor found that petitioner, Odom, was not an employee of Sanford & Treadway, and dismissed the suit as to them. Mann Hughes was also made a defendant, and the suit was likewise dismissed as to him.

Sanford & Treadway, a partnership, owned a large boundary of timber in Carter County. On January 29, 1924, they entered into a written contract with Birchfield & Garland for the cutting and hauling of said timber. Subsequently, Birchfield & Garland sublet a part of said work to the defendant, Mann Hughes, and petitioner was engaged in cutting said timber for Mann Hughes when a tree fell on him and seriously injured him. In the written contract Sanford & Treadway were referred to as parties of the first part and Birchfield & Garland as parties of the second part.

The contract provided that parties of the second part were to cut, skid, log and deliver to a certain mill site

all of the timber on the described tract of land, estimated to be one million, five hundred thousand feet. The contract then proceeds:

"The second parties agree to cut this timber into logs, cutting fifty per cent or more fourteen and sixteen feet long, the oak and chestnut to be cut sixteen inches and over in diameter measuring twelve inches above the ground, the balance of the timber and different varieties growing on this property is to be cut eight inches and over in diameter measuring twelve inches above the ground.

"All this timber is to be cut under the direction and supervision of the first parties or their agent, all to be sound timber, and special care is to be taken in cutting and falling the timber so as to do as little damage in splitting and breaking the trees in felling them as it is possible to do. . . .

"All the logs and timber that the first parties want cut to this set for the sum of $7.50 per thousand feet, measurement to be made by log scale and the scale to be made by the first parties or their agents, second parties can be present if they so desire when the measurements are made. All logs to be measured straight and sound cutting out all defects. . . .

"The second parties agree and bind themselves to keep logs on the skidway and the log yard at all times in sufficient quantity to keep the mill running until the job has been completed."

The contract then provides where the parties of the second part are to begin cutting, and provides for advances to parties of the second part. The contract contains this provision:

"It is understood and agreed that the second parties are to be continuously on this job and at work until it has all been completed and the job of cutting, skidding.

and delivering the logs has been looked over by the first parties and the contract is released.''

The contract then provides that if the second parties fail or refuse to deliver this timber as agreed to, the parties of the first part are' authorized to have said timber cut and delivered, etc.

Finally the contract provides the following:

''It is agreed that in cutting and logging and delivering this timber to the mill that the second parties shall cut and deliver such logs and trees as the first parties want and leave what they do not want standing in the woods, and this all to be done under the supervision and directions of the first parties.''

So far as exercising active control over the operations by Sanford & Treadway, Miller, who was in charge for them, testified that he called their attention to the fact that they began cutting at a different place from that provided in the contract, and that when they had finished he pointed out to them four or five trees that had been overlooked, and that, with these two exceptions, he gave no instructions or directions with respect to the cutting and hauling of said timber. This testimony, under the rule, must be accepted as true, and affords some evidence in support of the Chancellor's decree.

It follows, therefore, that unless the written contract constitutes Birchfield & Garland employees of Sanford & Treadway they must be treated as independent contractors.

(1) Counsel for petitioner rely chiefly on the provision of the contract which provides that ''all of the timber is to be cut under the direction and supervision of the first parties or their agent.'' This in and of itself does not constitute the second parties employees.

In 31 C. J., 473, under the title ''Independent Contractor,'' it is said:

"Generally the term signifies one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of the work, and who has the right to employ and direct the action of the workmen, independently of such employer and free from any superior authority in him to say how the specified work shall be done or what the laborers shall do as it progresses; one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result. It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors. (2) Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. (3) Ordinarily the question is one of fact. The principal consideration in determining the question is the right to control the manner of doing the work. Generally speaking, it may be stated that, if the employee is under the control of the employer, he is a servant or employee and not an independent contractor, but, if in the performance of the work he is not under the control of the employer, he is an independent contractor. However, it is not the actual exercise of the right by interfering with the work but the right to control which constitutes the test. The test oftenest resorted to is the ascertainment of whether the employee represents the employer or master as to the result of the work or only as to the means; if only as to the result, and in the employment of the means he acts entirely independent of the master, he must be regarded as an independent contractor."

Under the same title in 14 R. C. L., beginning on page 67, it is said:

"The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor. So, where the contractor lets a portion of the work to another contractor, the latter's independence is to be determined by the same criterion of the control of the work. In this connection, the ultimate question is not whether the employer actually exercises control over the doing of the work, but whether he has the right to control. The employer may in fact leave to the contractor the details of the work, but if the former has the absolute power to control the work, the contractor is not independent. But whether or not the employer exercises control may, however, be a fact to be considered in determining the precise relations of the parties. The circumstance that an employer has actually exercised certain control over the performance of the work may not only render him responsible for the acts done under his direction, but may be considered as a factor tending to show the subserviency of the contractor. In other words, the fact that the employer has actually exercised control is properly considered as tending to show that he has a right to control. And, on the other hand, the fact that during the performance of the work the employer has exercised no control may be considered as tending to show that he has no right to control. But the mere fact that the employer was present and made suggestions or requested the contractor to hurry the

work, has no probative force in determining that question.

"As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control,—at least to enable him to see that the contract is performed according to the specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for the relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract. The control of the work reserved in the employer which makes the employee a mere servant is a control, not only of the result of the work, but also of the means and manner of the performance thereof; where the employee represents the will of the employer as to the result of the work but not as to the means or manner of accomplishment, he is an independent contractor. Thus a person employed to perform certain work is not necessarily a mere servant because the contract provides that the work shall be subject to the approval or satisfaction of the employer. Such a provision is not an assumption by the employer of the right to control the employee as to the details or methods of doing the work, but is only that the employer may see that the contract is carried out according to the plans.

"The mere fact that the employer reserves a right to supervise or inspect the work during its performance does not make the contractor a mere servant, where the mode and means of performance are within the control of such contractor. The right of the employer to go upon the premises and see that the work is being done according to the specifications of the contract does not

affect the relations of the parties so as to constitute the employee a mere servant. If the contract provides that the work shall be done 'under the direction' and subject to the approval of the employer, a closer question is presented, but the predominant view is that the question is to be determined from all the provisions of the contract together with the surrounding circumstances, and that such a provision does not necessarily make the employee a mere servant. But the right of supervision is to be distinguished from a supervisory control, and where the supervision reserved by the employer is in the nature of a control over the means and manner of performing the work, the employee is not independent. Thus, when a municipality contracts for the making of a public improvement under the supervision of its own engineer or other public officer and subject to his orders, the contractor may not be independent. But each contract is to be construed according to its own terms and the surrounding circumstances and, hence, municipal contracts frequently, if not generally, create the relation of employer and independent contractor.''

And on page 72, it is said:

''The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency of the employee. Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself. On the other hand, the fact that the employer cannot terminate the employment strongly tends to show that the contractor is independent.''

*(4)* In *Railroad* v. *Cheatham,* 118 Tenn., 170, the con-
tract contained the following provision.

". . . It is distinctly understood and agreed be-
tween the parties that the work under this contract shall
at every stage of its progress from beginning to end be
subject to the direction, inspection, and acceptance of
the engineer, who shall determine what in any case is a
fair construction of the contract, and what such construc-
tion requires to be done by their party, and his final meas-
urements and classifications shall be final and conclusive
upon both parties . . ."

The court held that this, and other provisions relied
upon, did not constitute the contractor an employee.

The court, in its opinion, said:

"But neither the reservation of the power to terminate
the contract when in the discretion of the engineer the
work is not progressing satisfactorily, the right to exer-
cise general supervision and inspect the work as it pro-
gresses, nor the right to enforce forfeitures, will change
the relation so as to render the company liable.

"The fact that the employer reserves the right to
change the plans of doing the work, or that the work shall
be done to the satisfaction of the employer, or of an agent
appointed by him or that the employer reserves the right
to discharge any of the contractor's men, does not affect
the question. A partial reservation or control in certain
respects does not transform a contractor into a mere
servant. If in fact the contract places the contractor in
an independent relation, and he reserves general control
over the work as to the manner of doing it and method
of its execution, the fact that the employer reserves the
right to prescribe what shall be done, but not how it
shall be done or who shall do it, does not divest him of

the character of a contractor. Wood on Master and Servant, 614.

"The right of supervision and the right of the engineer to see that the work was done according to the plans and specifications already prepared does not affect the question of independent contractor. *Casement* v. *Brown,* 148 U. S., 622, 13 Sup. Ct., 672, 37 L. Ed., 582."

In 3 Words & Phrases (First Series), 2074, it is said:

"The word 'direction,' as used in a contract by which a contractor agreed to build a sewer under the immediate direction and superintendence of the commissioner of public works, related to the results, and not to the methods to be employed, and did not, therefore, make the contractor a servant of the city, as being one who, though he is to have a stipulated price for a thing, executes it under the direction and superintendence of the employer. *Foster* v. *City of Chicago,* 64 N. E., 322, 323, 197 Ill., 264."

Counsel rely upon the provision of the contract which provides that the second parties shall cut and deliver such logs and trees as the first parties want and leave what they do not want standing in the woods.

This provision does not deal with the means or methods by which the timber shall be cut and hauled, but, at most, only limits the quantity to be cut, and, in a way, contradicts the main provision of the contract, which provides that all timber of certain kinds and dimensions is to be cut. It appears that all was cut, without any attempt by the owner to direct the cutting of a less amount. This provision was explained by Mr. Miller to mean that the owner was to have the final say, if a controversy arose as to whether certain trees came within the specifications of the contract. With this explanation, which, *as we recall,* is not questioned, all of the provisions are in harmony.

In any event, we are of the opinion that the contractors had the right to cut and haul all of the timber specified in the contract, and it seems that no question was raised as to this right, and the practical construction given to the contract by all parties was that all trees specified in the contract were to be cut and removed.

(5)  Taking the cause as a whole, we find that the written contract, in the language employed, did not constitute the relationship of employer and employee, and that this view is strengthened by the fact that the owner in no instance undertook to exercise control over the contractors with respect to the means and methods by which they should cut and transport said timber.

But it is said that the court reached a contrary conclusion in *Finley* v. *Keisling,* 151 Tenn., 464, under circumstances substantially similar.

That was a border line case; the written contract was very brief and contained no details as to the work to be done, or the relationship of the parties, further than the proviso that the contractor was "to cut and haul said timber as directed" by the owner. The decision was rested primarily upon the practical construction placed upon the contract by the parties, particularly by the company.

There the company kept a foreman on the ground practically all of the time, shifted the crew from place to place, designated the kinds of timber to be cut and the dimensions of same, as their trade required. Mr. Keisling testified as follows:

"Q.  According to your statement of what the contract was, you had absolute control of the cutting of the timber?  A.  We had control; as I told you it would be cut when we said cut it, and kind of timber; that is, kind of trees that were to be cut; well, we did not go around and

pick out every tree; occasionally Mr. Ledbetter would go through the woods and see a tree that ought to be cut, and he would give orders to cut it and to have it cut in certain lengths. That was the only authority we exercised in cutting the timber.

"Q. Under the provisions of this contract you could have stopped these men at any time? A. I think so. That was the intention of it. If the market conditions got so bad that we had to shut down the mill, we had a right to stop the cutting and logging of the timber.

"Q. You had absolute control of that part of it, the management of the cutting and the logging, when it was to be done and how? A. Yes, sir; as to that part of it, we had control. I think the contract reads that the second party shall cut the timber under the directions of the first party."

From the foregoing it will be seen that the defendant admitted that it exercised control over the contractor in the methods employed in cutting and hauling the timber, and that it had a right to terminate the contract at any time.

In this situation the court said that "where the power to direct and supervise the work is reserved, under practically all of the authorities, the contractee is a servant, and not an independent contractor."

(6) The rule that the court was attempting to announce was simply that where the owner exercised control over the means and methods by which the contractor performed the work, under practically all of the authorities, the relationship was that of employer and employee.

(7) But as stated hereinabove, the owner can exercise direction and control as to results without destroying the independency of the contract.

In *Finley* v. *Keisling, supra,* we concluded that the owner was in absolute control as to the method employed in cutting and removing the timber, while in the instant cause the contract was very full and specific as to details, and, in our opinion, it was not contemplated by the parties that the owners should exercise such control, and they, in fact, did not do so.

(8) We are further of the opinion that section 15 of the Workmen's Compensation Act cannot be invoked by petitioner, for the reason than Sanford & Treadway were neither "principal, intermediate or subcontractors." *Siskin* v. *Johnson,* 151 Tenn., 93.

It is finally insisted that the Chancellor committed error in not entering a decree in favor of petitioner against Hughes.

The record shows that Hughes is insolvent, and the cause was never put at issue as to him, and the record does not show that any decree was asked against him in the trial court.

(9) The record further fails to show that the statutory notice was served on Hughes.

(10) In these circumstances, no decree could be entered against him in this court.

We find no error in the decree of the Chancellor, and it will be affirmed with costs.