# KNIGHT et al. v. HAWKINS.—173 S. W. (2d) 163.

Western Section.   October 30, 1941.

Petition for Certiorari denied by Supreme Court, June 2, 1942.

450

Waldrop & Hall, of Jackson, for Knight.

W. P. Moss and E. J. Nunn, both of Jackson, for National Life & Accident Ins. Co.

Avery & Avery, of Alamo, for Mrs. Hawkins.

KETCHUM, J. This is an action instituted by Mrs. Hawkins against the plaintiffs in error A. J. Knight and the National Life & Accident Insurance Company to recover damages for the alleged wrongful death of her husband D. M. (Jack) Hawkins in an automobile accident. The accident happened at about 6 p. m. on the 28th day of February, 1940, at a point on State Highway No. 20 just north of the town of Friendship, in Crockett County.

The defendant was driving alone in his automobile on his way home from Jackson to Dyersburg. Just after he passed through the town of Friendship he ran off the concrete road and struck the said Hawkins who was walking in the same direction on the left shoulder of the road. There were no eyewitnesses to the accident but the circumstantial evidence indicates that the car ran diagonally across the road and struck Hawkins as he was walking in the same direction on the left shoulder of the road. As a result of the impact he received injuries which resulted in his death approximately an hour later. Knight himself had no recollection of what caused him to lose control of the car and there is evidence that he stated after the accident that he had fallen asleep and lost control of the car, but on the trial he testified that without any warning of drowsiness or illness he had lapsed into unconsciousness, and that he regained consciousness after the car had run off the road into a field across the ditch. Hawkins was unconscious when the first witness arrived after the accident and never regained consciousness after that.

The case was tried before a jury and resulted in a verdict and judgment against the defendants for $8,000. Both defendants have appealed in error to this court.

By its first and fourth assignments of error the Insurance Company contends that there is no evidence to sustain the verdict against it, and that the court erred in overruling its motion for a directed verdict at the close of all the proof.

There is ample evidence to sustain the verdict as to the defendant Knight. But the Insurance Company contends that the doctrine of respondeat superior can have no application because there is no evidence to sus-

tain the allegation that Knight was its employee, or that it had any control over him, or had any right to direct or control his movements in the operation of his car at the time the accident occurred.

Knight was the District Manager of the defendant Insurance Company, having his headquarters in Jackson. His territory embraced all of West Tennessee outside of Shelby County, with certain counties in Northern Mississippi and Western Kentucky. He had a large number of industrial agents of the company working under him at Jackson and in all the principal towns throughout his territory. He was the ''recruiting officer'' for new agents for the company in his territory and it was his duty to train the agents and instruct them as to their duties, give them examinations from time to time, and to perform other duties incident to his task of producing, building up and promoting the business of the company in his district. He was paid a base salary plus commissions on new business produced in his district. He also wrote some ordinary life insurance business for which he was paid the usual agents' commissions.

He had started to work for the company as an industrial agent many years before and had been promoted from time to time, and had been a District Agent for eight years. He had no written contract with the company, but he was assigned a territory, and his compensation was agreed upon either orally or in correspondence with officers of the company. His duties as District Agent were set forth in a book of instructions which was furnished to all agents, and in a manual for the guidance of District Agents and Superintendents which was furnished to him.

He was required to devote his entire time to the work of the company. One of the duties required of him was to give periodical examinations or instructions to the industrial agents of the company in his district. For these examinations the agents throughout his district would be called to meet him either at Jackson, or at some other town in the district on specified dates. He had called the agents of his district to meet him at Dyersburg for such examination on the 29th of February, 1940. On the evening of the 28th he left Jackson at about 5 o'clock to go to Dyersburg for the meeting to be held there on the following day; and it was while he was on this trip that the accident occurred.

It was optional with him whether he held these agents' meetings at Jackson or at other places in his district. When they were held elsewhere than at Jackson the company paid his hotel and traveling expenses, and when he drove his own car it paid him mileage for the use of his car.

The company reserved the right to terminate the services of any person connected with it at its pleasure, without stated cause.

It paid the Social Security tax to the Federal Government as an employer, and Knight also paid his share of said tax. The company also provided a retirement fund for employees reaching the age of 65, and District Agents were entitled to the benefits of this provision upon attaining that age.

While there is much force in the argument that Knight's status in relation to the company was that of an independent contractor whose duty it was only to achieve a certain result, and that the company was not concerned with the means and methods by which he accomplished

that result (and there are many cases supporting that view as will be hereinafter pointed out), yet there are many facts which seem to us to lead to the conclusion that the relationship between them was that of master and servant.

The fact that he was paid a salary and that he was required to devote his entire time to the company's business are indicative of an employer and employee relationship. And the fact that the company reserved the right to discharge him at will is by all the cases recognized as a most important circumstance as indicating that the relationship is that of employer and employee. In Odom v. Sanford & Treadway et al., 156 Tenn. 202, 210, 299 S. W. 1045, 1047, the court adopts the following statement of the rule on this question from 14 R. C. L., "Independent Contractors," sec. 9, page 72: "The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency of the employee. Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses . . . On the other hand, the fact that the employer cannot terminate the employment strongly tends to show that the contractor is independent."

And in Income Life Insurance Co. v. Mitchell, 168 Tenn. 471, 79 S. W. (2d) 572, it is said that the right to discharge, or the absence of such right, is a circumstance of much importance in determining whether the relationship of employer and employee exists, citing Odom v. Sanford & Treadway et al., supra; and that when

employment is shown, the burden is on the employer to establish an independent contractual relationship, citing Sledge v. Hunt, 157 Tenn. 606, 12 S. W. (2d) 529.

Other significant facts indicating that the parties themselves interpreted their relationship as that of employer and employee are found in the fact that each paid his share of the Social Security tax to the Federal Government which is payable only where the relationship of employer and employee exists; and that the company provided a retirement fund in which District Agents were entitled to participate and in which Knight will be entitled to participate if he remains with the company until he reaches the retirement age.

In Odom v. Sanford & Treadway, supra, the court say that "It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors. Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact. The principal consideration in determining the question is the right to control the manner of doing the work." 31 C. J., 473.

In the Mitchell case, supra, it was held that Mitchell was not an employee but an independent contractor. The decision was predicated upon the ground of the entire absence of any control over the methods adopted by him in accomplishing the results required of him under his contract. He was an industrial insurance agent having a designated territory, and he was engaged in selling industrial insurance, collecting the weekly premiums thereon, for which he received a commission on the insurance written. The company exercised no control over him in the

performance of his duties, looking only to the results attained.

American National Insurance Co. v. Poole, 24 Tenn. App. 596, 148 S. W. (2d) 14, is similar in all material respects to the Mitchell case and the decision was controlled by the Mitchell case; and following the ruling in that case it was held that because of the entire absence of control of the means adopted by Poole in the performance of his work the relationship of employer and employee had not been established.

The facts in the Mitchell and Poole cases are distinguishable from those in the instant case in many respects, notably in the fact that they were not paid a regular salary, were not required to devote their entire time to the business of the company, and they did not pay the Social Security tax; and in the Poole case the right to terminate the contract at will was not reserved by the company.

The most recent expression on the question by by our supreme court which has been brought to our attention is in the case of Morrison v. National Life & Accident Insurance Co., 162 S. W. (2d) 497, in a memorandum opinion by Special Justice Smith filed at Jackson on April 6, 1940. In that case Morrison who was a motorcycle police officer in Memphis collided with an automobile driven by one Darby, a soliciting agent of the insurance company. Darby sold industrial insurance and had a ''debit,'' and was also allowed to sell ordinary life insurance and collect premiums on ordinary life policies outside of his ''debit.'' At the time of the accident he was on a mission to collect a premium on an ordinary life policy outside of the limits of his ''debit.'' On the trial of the case the trial judge sustained a motion of the de-

fendant for a directed verdict, and on appeal, this court conceiving that the case was controlled by income Life Ins. Co. v. Mitchell, supra, and relying upon American Nat. Ins. Co. v. Denke, 128 Tex. 229, 95 S. W. (2d) 370, 107 A. L. R. 409, affirmed that judgment. A petition for certiorari was granted, the judgment of this court was reversed upon the ground that there was some evidence from which the jury might conclude that the ownership and use of an automobile by the agent in the performance of his duties was required by the company, and that therefore the rule of respondeat superior was applicable. The case was accordingly remanded for a new trial. The court did not consider that the Mitchell case, supra, was in point because the facts in the two cases were so different as to render it inapplicable; but added that the court was in thorough accord with the rule as stated in sec. 250 of the Restatement of the Law of Agency. The rule there stated that a principal is not liable for physical harm caused by the negligent physical conduct of an agent who is not a servant, during the performance of the principal's business unless the act was done in the manner directed or authorized by the principal, or the result was one intended or authorized by the principal. And in the comment on this rule it is added that ''It is only when to the relationship of principal and agent there is added that right to control physical details as to the manner of performance which is characteristic of the relationship of master and servant that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor.''

In the Morrison case it is noted that there is a decided conflict in the authorities, in facts quite similar to those under consideration, and that each case must be decided

on its own particular facts; and many cases are cited as showing this.

Among the cases so cited is American Savings Life Insurance Co. v. Riplinger, 249 Ky. 8, 60 S. W. (2d) 115, 117, 119, in which it was said that "the right of control of the means of doing the work, or want of it, is the determinative factor when considering the relationship;" and it was held that the relationship of employer and employee did not exist in the case of an insurance agent who could come and go when he pleased, and adopt any mode of travel that he chose.

Another case cited in this connection is American Nat. Insurance Company v. Denke, 128 Tex. 229, 95 S. W. (2d) 370, 107 A. L. R. 409, in which it was held that a soliciting agent of an insurance company having a "debit" and selling industrial insurance was in common everyday parlance an "insurance agent" and not a "servant" within the usual significance of that term; and on the authority of section 250 of the Restatement of the Law of Agency above quoted it was held that the company did not have the right to control the details of the physical movements of the agent and was therefore not liable for his tortious acts.

In an extensive note to this case, and other cases in A. L. R. there referred to, many cases are cited which support the holding of the principal case, and many others in which the question whether the agent was acting within the scope of his employment at the time of the accident is held to be the determining factor. It would be useless to discuss or to try to distinguish the numerous cases on the question as they seem to be in irreconcilable conflict. As said by the court in the Morrison case each case must be determined on its own particular facts.

In the present case it is not disputed that Knight was engaged about the company's business at the time of the accident. He was on his way to attend an agents' meeting at Dyersburg. It was one of his duties as District Agent to hold these meetings periodically. He was not required to use his own car in his business, but was accustomed to do so, and the company acquiesced in it by paying him for the use of his car when he did use it; and it did so on this occasion. He was using the automobile in the company's business and within the scope of his duties at the time this accident happened.

■ To say the least, there is a legal doubt to be drawn from the whole evidence as to whether Knight's status in relationship to the company was that of an employee or an independent contractor, and upon this ground the motion for a directed verdict was properly denied. Hines v. Partridge, 144 Tenn. 219, 232, 231 S. W. 16; Provident Life & Accident Ins. Co. v. Prieto, 169 Tenn. 124, 83 S. W. (2d) 251. These assignments of error are accordingly overruled.

The defendant Knight assigns as error the action of the trial court in refusing the motion of the defendant Insurance Company for a directed verdict, and in permitting the case to go to the jury with the Insurance Company as his codefendant.

The argument made in support of this assignment is (1) that the Insurance Company was entitled to a directed verdict; (2) that juries return larger verdicts where large corporations are involved than they do in actions against individuals; (3) that he was prejudiced because he was "yoked up" with a large corporation, and that the verdict against him would have been smaller if he had been sued alone.

There is no merit in the assignment (1) because, as we have held, the motion of the Insurance Company for a directed verdict was properly refused; and (2) because, theoretically at least, juries are presumed to act impartially without regard to whether the suit is against individuals or corporations, or both, and we find nothing in the record to indicate to our minds that the verdict would have been smaller if Knight had not been "yoked up" with the Insurance Company as a defendant. Assignment overruled.

Both the defendants assign as error that the verdict of the jury was excessive, and so excessive as to indicate passion, prejudice and unaccountable caprice on the part of the jury, and, also in the refusal of the court to grant a special request to the effect that the plaintiff was not entitled to recover any damages for pain and suffering since there was no evidence that the deceased was ever conscious after he was struck.

These two assignments may properly be considered together because if the verdict is held to be excessive it must be upon the ground that the court should have granted this special request.

In the declaration the plaintiff alleged pain and suffering of the deceased as an element of damages. The court made no reference to this in his statement of the theories and claims of the parties in the opening part of his charge. In defining the measure of damages he charged the jury that "The plaintiff's measure of damages, if you find for the plaintiff, is fair and reasonable compensation to be measured by the pecuniary value of the deceased, having regard for his age, condition of his health, his earning capacity, and his life expectancy."

■ There was evidence that the deceased was a young man 29 years of age, in good health, a painter and paper hanger by trade, with an expectancy of life of 30 to 36 years; that he had earned 20 cents an hour over a period of a year while he worked for a painter named Dave Taylor; and 30 cents an hour after that when he worked with Boon York during the last six or seven months of his life; that he had become more proficient in his work, and was working for himself. This gave him an earning capacity of $2.50 per day, or more than $60 per month, or about $750 per year, with an expectancy of life of more than thirty years. We do not think an $8,000 verdict was excessive.

■ Now as to the refusal of the special request. It is true that the plaintiff, in the declaration, alleged pain and suffering as an element of damages. But we are cited to no testimony that the deceased suffered at all after he was struck. The only evidence on the subject is that he was unconscious when the first witness arrived on the scene and that he never regained consciousness after that. In the absence of any testimony that he suffered any pain, a charge that the jury could not consider pain and suffering as an element of damages was unnecessary.

■ There is no affirmative error in the charge on the subject as given, and the court will not be put in error for refusing a special instruction that the jury could not consider as an element of damages something about which no proof was offered. We will not assume that the jury took into consideration pain and suffering as an element of damages where the nature of the injuries indicated that he must have been rendered unconscious from the time he was struck, and all the proof is that he

never regained consciousness after he was found unconscious very shortly after he was struck.

These two assignments will be overruled.

Finding no error in the judgment of the trial court it is in all respects affirmed. The costs are adjudged against the plaintiffs in error and the sureties on the appeal bonds.

Senter and Anderson, JJ., concur.