# F. PERLMAN AND COMPANY, Plaintiff-in-Error, v. JIMMY GILLIAN, Defendant-In-Error.—355 S. W. (2d) 638.

Western Section.   July 28, 1961.

Petition for Certiorari Denied by Supreme Court, October 20, 1961.

Robert M. Burton, Memphis, for plaintiff-in-error.

Tipton & Tipton, Covington, for defendant-in-error.

AVERY, P. J. (W. S.). This is a personal injury and property damage suit from the Circuit Court of Tipton County, Tennessee, by plaintiff below, Jimmy Gillian, against the original defendants below, J. T. Yarbro, C. L. Waddell and A. E. Waddell, d/b/a Waddell Brothers, F. Perlman & Company, Southern Trucking Company and Southern Tin Compress Corporation, such personal injury having resulted from the collision of a GMC truck, license No. 30P/8 X05 (1955 registration), Motor No. B. 270-787757, 1949 model owned by Waddell Brothers driven by J. T. Yarbro, with a 1954 Ford Crestline, 4-Door sedan owned by Jimmy Gillian, on Highway 70-A in Haywood County, Tennessee, on September 1, 1955, and in the declaration the personal injury damage is laid at $15,000.00 with the property damages at $2500.00.

The case was tried to the Honorable Mark A. Walker, Judge, and a jury in the Circuit Court of Tipton County, Tennessee, on the 23rd day of November, 1960, and during the trial at the conclusion of plaintiff's testimony on plaintiff's motion a non-suit was granted as to A. E. Waddell and C. L. Waddell d/b/a Waddell Brothers and a directed verdict in favor of Southern Trucking Company and Southern Tin Compress Corporation, the issues being submitted to the jury only against J. T. Yarbro and F. Perlman & Company, where there was a verdict in favor of the original plaintiff and against J. T. Yarbro and F. Perlman & Company for personal injury to the amount of $5500.00 and property damage of $1500.00 or a combined total verdict of $7000.00, which was approved by the Trial Court and judgment entered accordingly, and to which exceptions were saved, motion for new trial made, filed and overruled, after which exceptions were again saved and an appeal-in-error prayed, granted and perfected to this Court, where errors have been assigned.

■ It should be said in the outset that this case was heard in this Court on the record and argument of counsel on the 24th day of May, 1961, when it appeared by oral statement from counsel for the original plaintiff, who is the appellee in this Court, and by his brief, that should be stated in this opinion as follows:

"Before discussing the question involved in this appeal, we direct the attention of the Court to the fact that neither the appeal bond, the bill of exceptions, nor the exhibits thereto, the original of which were sent up with the transcript and are on file in this Court, show that they were ever filed in the

lower Court. We do not make a motion to strike these instruments on this ground, but feel it our duty to point out these facts for such action, if any, as the Court may deem proper."

On this suggestion our attention being so directed, we find from an examination of the volume which is designated "Transcript of Evidence and Charge of the Court", and which in fact is the bill of exceptions, and the last page thereof the following:

"The defendant, F. Perlman and Company, tenders this its bill of exceptions containing all the evidence and proceedings on the hearing of this cause, together with the exhibits thereto, duly identified, and the Court having examined the same and found it to be correct does herewith order that the foregoing transcript, together with the exhibits, be filed as the bill of exceptions of the defendant, F. Perlman and Company, in this cause and made a part of the record in this cause.

"WITNESS my hand this 21st day of January, 1961.

"/s/ Mark A. Walker
"JUDGE

"APPROVED

"/s/ Tipton & Tipton
"Attorney for Plaintiff, Jimmy Gillian
"/s/ Robert M. Burton
"Attorney for Defendant, F. Perlman & Co."

It also appears at page 49 of the technical transcript by document shown to have been entered on the minutes of the lower Court and filed January 21, 1961, as follows:

"ORDER MAKING BILL OF EXCEPTIONS PART OF THE RECORD

"Upon motion made and for good cause shown, it is ordered that the bill of exceptions of F. Perlman and Company which has been signed and authenticated by the Judge, be filed with the Clerk of this Court and made a part of record in this cause; and that the Clerk is hereby ordered to submit to the Court of APPEALS AT Jackson, Tennessee, the original exhibits in this cause in lieu of making copies hereof and the Clerk is relieved of making copies thereof.

"It is further ordered that the bill of exceptions have been duly authenticated and filed and the bond of the defendant, F. Perlman and Company having been made and filed before the Clerk of the Court all within the time allowed by law, and the rules of this Court, the appeal of the above styled cause is in all respects complete and perfected.

"All of which is ordered this 21st day of January, 1961.

"(Signed)  Mark A. Walker
"Judge

"APPROVED:

"(S)  Tipton & Tipton
"Attorney for Plaintiff, Jimmie Gillian

"(S)  Robert M. Burton
"Attorney for Defendant, F. Perlman & Co."

It also appears that there is a batch of exhibits referred to as "Collective Exhibit 1, Cullen Waddell," consisting

of checks, bills of lading and tally-out sheets, which are not physically attached to either volume of the record,— that is, bill of exceptions volume or technical record volume, but which should have been attached together as they are found for the reason that it is clear from the record that the checks made out to Waddell Brothers supported by the bills of lading and the tally-out sheets were admitted in the evidence and have been identified as exhibits admitted in the proof to the jury. Now this batch of this exhibit made out as immediately above stated has on the back sheet, "Jimmy Gillian vs. J. T. Yarbro, et al. identified 1/21/61, Mark A. Walker, Judge." That appears on the back of the sheet on what seems to constitute about one-half of this entire batch of so-called exhibits. On the back of the last sheet of the entire batch, however, is found the following: "Gillian v. Yarbro, identified but not admitted in evidence 1/24/61, Mark A. Walker, Judge." At pages 48 and 49 of the record it is shown that this collective batch of exhibits carrying the date on the back, "identified 1/21/61" were admitted as a part of the proof and when they were offered as such exhibits by the defendant the Court said, "Any objection?", whereupon counsel for plaintiff said, "No objections to the admission of those", after which the Court said "Let them be introduced." And the record further states: "Whereupon the said invoices and checks were accordingly marked Collective Ex. 1, and will be found among the exhibits."

With the record in that condition, and the original exhibits being sent up, and by authority of an Opinion of the Supreme Court in the case of Thomas N. Redwood, Jr. -vs.- Dr. Robert Raskind, not published, but filed March 10, 1961, in which this Section of the Court

of Appeals was reversed, and which Opinion is based upon the authority of T. C. A. Section 27-109, and the Opinion of the Supreme Court in Moore v. Chadwick, 170 Tenn. 223, 94 S. W. (2d) 49 and Bragg v. Boyd, 193 Tenn. 507, 246 S. W. (2d) 575, reaffirming the Opinion in Moore v. Chadwick supra, we feel and do consider the record properly filed in this Court, including that batch of exhibits shown to have been approved on 1/21/61 by the Trial Court.

Only two errors are assigned and which are as follows:

## I.

"It was error for the trial judge to refuse to sustain the motion of the defendant Perlman, made at the conclusion of all the evidence for a direction that the jury return a verdict in its favor. This was error for the reason that the evidence conclusively showed that the defendant, Yarbro, was the agent, servant and employee of the defendants, Waddell Bros. and that the relationship existing between the defendant, Perlman, and Waddell Bros. was that of independent contractor-contractee and the defendant, Perlman, was not in any way responsible for the actions of the defendant, Yarbro.

## II.

"There is no evidence to support the judgment. This is true for the same reasons given in the first assignment of error."

Thus it will be seen that these two assigned errors really pose only one question:

IS THERE ANY COMPETENT AND SUBSTANTIAL EVIDENCE TO SUPPORT THE VERDICT.

OF THE JURY AND THE JUDGMENT OF THE TRIAL COURT THEREON?

In other words, is there any competent and substantial evidence to support the contention of the defendant below, F. Perlman & Company that A. E. Waddell and C. L. Waddell, d/b/a Waddell Brothers was acting under contract that created them an independent contractor in their relation to F. Perlman & Company in moving the cans in question from the Arsenal at Milan to F. Perlman & Company in Memphis?

Since the non-suit favorable to Waddell Brothers, and directed verdicts in favor of Southern Trucking Company and Southern Tin Compress Corporation, from which action of the Court no one has appealed, Gillian will be referred to hereinafter as plaintiff, J. G .Yarbro and F. Perlman & Company as defendants, except where referred to by personal name.

The proof is very clear that Yarbro was driving the truck of Waddell Brothers; that he was guilty of negligence which proximately contributed to the injury of plaintiff and that plaintiff was seriously and painfully injured. Yarbro never testified. Defendants, the Waddells, contend that they leased the truck and driver thereof to F. Perlman & Company. F. Perlman & Company contend that the Waddells were independent contractors. Therefore, the real question for determination is the legal and factual interpretation of what is said to be the contract between Waddell Brothers and F. Perlman & Company.

There is nothing in writing which will directly aid the Court in the proper construction of the alleged contract. The only necessity to refer to the pleadings is

simply to say that negligence is alleged and by proper pleas this negligence is denied. However, the declaration effectively avers that the driver of the truck, Yarbro, was the agent, servant and employee of all of the original defendants, except, of course, Yarbro himself, and that at the time of the collision which resulted in plaintiff's injury and damages, he, Yarbro, was on the business of each and all of the named defendants.

On plaintiff's application the defendants were required to plead their defenses specifically, and separate specific pleas were filed by each, except that Yarbro filed a plea as provided by the Soldiers' and Sailors' Relief Act through his appointed Attorneys ad Litem, Hugh Bringle and Charles S. Seay, which merely sets out the fact that he is an enlisted man on active duty with the United States Army and he files a not guilty plea by such Attorneys ad Litem.

The same attorneys who were appointed Attorneys ad Litem for the defendant Yarbro, also represented the Waddells and in their special plea they specifically deny each allegation of negligence laid in the declaration. There are only two averments in the plea of the Waddells which need any particular attention and they are as follows:

"1. Defendants deny that said truck was owned by the defendants C. L. Waddell and A. E. Waddell and plead that same was owned by one, the said E. E. Waddell, not a party to his cause.

"2. Answering Count III of the declaration, this defendant denies that the defendant J. T. Yarbro was acting as its agent, servant or employee at the time and place of this accident * * * and on the busi-

ness of these defendants, or either of them; defendants admit that the said J. T. Yarbro was at the time the servant of and on the business of the defendants F. Perlman & Company, Southern Trucking Company, and Southern Tin Compress Corporation.

\* \* \* \* \* \*

"Further answering, these defendants specially plead that said GMC truck at the time and place aforesaid was registered in the name of E. E. Waddell, who is not a party to this cause, and was at the time and place being driven by the defendant, J. T. Yarbro, who was not the agent or servant or under the control of the defendants, C. L. Waddell and A. E. Waddell, or either of them, but the agent or servant of the corporate defendants named in the declaration and summons, and under their sole and exclusive control, working at their business, and under their name, direction and authority."

The pleas of the defendant, Southern Tin Compress Corporation, after denying any negligence on the part of Yarbro, specifically deny that he was the agent, servant and/or employee or acting in any capacity for it. It does not allege that Yarbro was agent for any other person or corporation.

The pleas of the defendant, Southern Trucking Company deny that the defendant Yarbro was acting as its agent, servant or employee at the time of the alleged collision which resulted in plaintiff's injury and makes no averment that Yarbro was the employee or servant of any other defendant, simply denying all averments of his guilt.

Special pleas of F. Perlman & Company were filed and says "this defendant denies that J. T. Yarbro was at that time acting as agent, servant or employee of this defendant, F. Perlman Company; it denies that J. T. Yarbro was on the business of this defendant, F. Perlman & Company."

These denials run to each count of the declaration. The plea then continues with this statement:

"Answering further, this defendant avers that at the time and place of said accident, the defendant, J. T. Yarbro, and his employers, C. L. Waddell and A. E. Waddell d/b/a Waddell Bros., occupied the relationship of independent contractor with this defendant; that this defendant had entered into a contract with its said co-defendants whereby they were to transport a number of powder cans from the Milan Arsenal to Memphis at the rate of Seventeen (17) cents per can and that this defendant exercised no degree of control over its co-defendants, J. T. Yarbro and Waddell Bros.; that it's said co-defendants used their own truck, their own driver, maintained their own equipment and that as aforesaid they were to be paid at the rate of Seventeen (17) cents per can and that this defendant, F. Perlman and Company, is, therefore, not in any way responsible for the actions of its said co-defendants.

"Answering further, this defendant avers that at the time and place of said accident the defendant, J. T. Yarbro, was driving the truck owned by his employers, Waddell Brothers."

The defendants contend that the proof shows without contradiction that:

(1) Waddell Brothers were in the hauling business.

(2) Made the trade to haul cans for them from Milan Arsenal to their lot in Memphis by a contract negotiated by Eugene Waddell and George T. Perkins, as defendant's agent.

(3) Owned and maintained the truck involved in the accident and it was registered in their name.

(4) Hired the defendant driver Yarbro, and paid his wages.

(5) That there was a simple contract by which Waddell Brothers were to be paid 17½ cents per can for the cans hauled from Milan Arsenal to Memphis by Waddell Brothers for them, but did not contract to haul all of the cans defendant owned.

(6) Were paid for the cans hauled at the rate per can contracted for.

(7) That they had several different concerns hauling cans from the same point to the same point.

(8) Defendants had no control over the kind of truck to be used, the driver thereof, the route to be traveled nor in fact the method of transportation.

(9) That the defendants did not know who would drive the truck and gave no instructions except advised Waddell Brothers the time of day the Milan Arsenal opened and the time of day that the lot in Memphis to which the cans were to be transported, closed.

The first seven above numbered statements are proven without any contradiction whatever. Nos. eight and nine must be determined from inferences properly drawn from the facts proven.

Plaintiff insists that when the accident occurred the involved truck owned by Waddell Brothers and used in its business, together with the driver thereof:

1. Was leased to F. Perlman & Comapny.

2. That on the cab of the truck unit there was a printed sign "Leased to F. Perlman & Company".

3. That the contract of employment made with Waddells by one George Perkins was in behalf of defendant F. Perlman & Company.

4. The bills of lading for the cans hauled by Waddells show they were consigned to F. Perlman & Company and picked up by the consignee.

5. That neither the defendant Yarbro nor Waddell Brothers had a permit to enter the Milan Arsenal.

6. Waddell Brothers had no permit to do public hauling.

7. That the truck and drivers were leased to F. Perlman & Company to haul powder cans owned by F. Perlman & Company from the Milan Arsenal to Memphis.

8. That defendant, J. T. Yarbro, was under the exclusive control of the defendant, F. Perlman & Company, at the time and place of the accident.

9. That F. Perlman & Company through George Perkins agreed that the sign, "Leased to F. Perlman & Company" be placed on the cab of the truck at time contract was made.

10. That the permit to enter the Milan Arsenal by the driver and truck involved was one granted to F. Perlman & Company.

11. No cans were hauled by Waddell Brothers except on instruction from defendant F. Perlman & Company, directing when to go, where to get the cans, where to deliver the cans and could only haul cans at the convenience of F. Perlman & Company and on its instructions, and

12. Under the lease defendant Perlman could haul anything they wanted to haul.

There is no contradiction to Nos. 1 through 6, but Nos. 7 through 12 must be governed by inferences to be gained from the proven facts.

The proof in the case will be more easily understood if we keep in mind the fact that all the official defendants named in the summons and declaration were still involved through the entire hearing of plaintiff's proof in chief.

When we find the correct answers to defendant's contention Nos. 8 and 9 we likely will have arrived at the correct answers to plaintiff's contention Nos. 7 through 12.

It seems likely that the one of the Waddels who made the trade to haul the cans with Perkins could testify about what the trade actually was. So in analyzing the evidence of the Waddells as to correctness we first must determine which one of them acted for Waddell Brothers in making the trade. Cullen Waddell testified on direct examination, having been called to the witness stand by the plaintiff, therefore, being plaintiff's witness, though at the same time a defendant,—he was asked and answered.

"Q—I ask you, Mr. Waddell, did you actually make the trade with Mr. George Perkins for Pearlman & Company for hauling these cans?

"A—Not directly, no, sir.

"Q—Who made it?

"A—My brother.

"Q—That is Mr. Eugene Waddell?

"A—Yes, sir."

The evidence nowhere shows Cullen Waddell present when the contract was made.

On that point Mr. Eugene Waddell, who was also called as a witness by counsel for the plaintiff and was thus plaintiff's witness, was asked and answered:

"Q—Mr. Waddell, I will ask you if you made a trade or lease of your truck and driver to Pearlman & Company through Mr. George Perkins?

"A—Mr. George Perkins. I made a trade with Mr. George Perkins.

"Q—Where was that trade made?

"A—On Southern Trucking lot right off of Seventh Street."

When Mr. George T. Perkins was placed upon the stand on cross examination he was asked and answered:

"Q—Did you handle the deal all the way through?

"A—All the way through?

"Q—Yes, sir.

"A—With the exception of paying the Arsenal a check for them, yes.

"Q—And any instructions that were made were given by you, is that correct?

"A—That's right."

Since so many defendants were still in the case when the plaintiff's testimony was being given it is necessary to find out not only who made the trade for Waddell Brothers, which is shown positively by questions and answers above and with whom the trade was made, which is shown to be Mr. George Perkins, but who was Mr. George Perkins acting for when the trade was made? In other words, who did Mr. George Perkins actually represent when he made this deal with Waddell Brothers? Eugene Waddell on that point, testified as follows:

"Q—You are a partner in Waddell Brothers, defendants in this lawsuit?

"A—Yes, sir.

       \*      \*      \*      \*      \*      \*

"Q—I will ask you if in accordance with that trade you put—if you had a sign placed on your truck?

"A—Yes, sir.

"Q—Leased to F. Pearlman & Company?

"A—Yes, sir."

Now at the time that Mr. George T. Perkins took the stand all the other defendants were out of the case. Waddell Brothers by a non-suit, Southern Tin Compress Corporation and Southern Trucking Company by directed

verdicts, leaving only defendants Yarbro and Perlman & Company. On direct examination Mr. Perkins was asked and answered:

"Q—Mr. Perkins, we will get right down to the meat of this lawsuit. Did you at some time prior to September 1, 1955, make a deal with Waddell Brothers for the hauling of cans from the Milan Arsenal to Memphis?

"A—Yes, sir.

"Q—Did you do that in behalf of F. Pearlman & Company?

"A—Yes, sir.

"Q—You were doing that in behalf of the Pearlman Company?

"A—That's right, as a favor.

"Q—Did any member of the F. Pearlman & Company have anything to do with the transaction or did you handle the whole deal?

"A—I handled the whole deal."

So it is unquestionably shown that the real parties to the contract were F. Perlman & Company and Waddell Brothers. As shown above Mr. Eugene Waddell testified that he leased the truck and a driver to Perlman & Company. That in accord with that trade he had a sign placed on the truck "Leased to F. Perlman & Company". He was further asked and answered:

"Q—Mr. Waddell, what were the terms of this trade as best you recollect?

"A—To the best of my recollection it was—he was to pay me 17 cents a can for the truck and the driver.

\*　　\*　　\*　　\*　　\*　　\*

"Q—I will ask you whether or not Mr. Perkins or Pearlman exercised any control over your movements or the movements of that truck and driver?

"A—They told him where to go, when to deliver the cans, and when to pick them up. We didn't tell them.

MR. BURTON: Just ask the witness to state who told him. He says they. Who told them, may it please the Court.

"Q—Who told you, Mr. Waddell?

"A—Mr. George Perkins.

"Q—Do you know who he was acting for at that time?

"A—No, sir, I really don't."

The most peculiar thing with respect to statement of Eugene Waddell in connection with this trade, he was asked and answered:

"Q—I ask you if under the trade the truck could be used for any other purpose by Mr. Pearlman?

"A—Anything that he wanted to haul."

That is a peculiar statement because there is no claim whatever that there was any agreed price for anything that the truck might haul under that agreement, except cans, and no other commodity was designated. Furthermore the proof shows that nothing was ever hauled but

cans. On the other hand Mr. Perkins testifying to the instructions given Waddell Brothers as related to the trade and contract was asked and answered:

"Q—What was the deal, Mr. Perkins? Just state to the Court how much you were to pay, what was the method of payment?

"A—17½ cents a can for any amount of cans that they could haul.

"Q—Did you specify what driver they were to have hauling them?

"A—No, sir. I don't remember seeing one of the drivers in all the loads that they hauled.

"Q—Did you ever see this man Yarbro, the driver they are talking about?

"A—No, sir, not that I remember.

"Q—Did you ever give him any orders or commands?

"A—No, sir."

In giving consideration to Mr. Perkins' statement that he did not lease the truck and the driver and that he exercised no control over the driver Yarbro or any other driver in the hauling of the cans by Waddell, we must remember that whether they actually exercised control or not is only incidental, but the question is: WHO under the agreement had the right to control physical details of the driver in the hauling of the cans? Who controlled or had the right to control?

In the case of Income Life Insurance Co. v. Mitchell, 168 Tenn. 471, 79 S. W. (2d) 572, reaffirmed in the case

of Knight v. Hawkins, 26 Tenn. App. 448, 173 S. W. (2d) 163, 166, it is said that the right to discharge, or the absence of such right, is a circumstance of much importance on determining whether the relationship of employer and employee exists, citing Odom v. Sanford & Treadway et al., 156 Tenn. 202, 210, 299 S. W. 1045, 1047; and that when employment is shown, the burden is on the employer to establish an independent contractual relationship, citing Sledge v. Hunt, 157 Tenn. 606, 12 S. W. (2d) 529.

Also in those cases the rule adopted from 14 R. C. L., Section 9, page 72 under the title, "Independent Contractors", was approved as follows:

"The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency of the employee. Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses. * * * On the other hand, the fact that the employer cannot terminate the employment strongly tends to show that the contractor is independent."

Our courts in the foregoing cases and particularly in Knight v. Hawkins, supra, have adopted the rule stated in section 250 of the Restatement of the Law of Agency wherein it is said:

"It is only when to the relationship of principal and agent there is added that right to control physical details as to the manner of performance which is

characteristic of the relationship of master and servant that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor.''

In Odom v. Sanford & Treadway, supra, cited and readopted in Knight v. Hawkins, supra, it is said:

''It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors. Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact. The principal consideration in determining the question is the right to control the manner of doing the work.''

In Barker v. Curtis, 199 Tenn. 413, 287 S. W. (2d) 43, 45 (1956), quoting again from Odom v. Sanford & Treadway, supra, it is said:

''One of the most widely accepted definitions of an independent contractor is:

'' 'One who contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work, and who has the right to employ and direct the action of the workmen independent of his employer, and free from any superior authority in the employer to say how the specified work shall be done, or what the laborers shall do as the work progresses; one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains that result.' ''

The plaintiff in this case has sought to prove by the testimony of one of the defendants in the case, (Waddell Brothers) against whom a non-suit was sought and entered, that another defendant, Perlman & Company sustained the relationship of independent contractor for the work being done in its behalf at the time of the collision resulting in the injury.

■ When such proof is as consistent with one relationship as that of another, (agency or independent contractor), the burden rests upon the party asserting the existence of an independent contractor relationship and when there is some competent and material evidence supporting both relationships the determination of such conflict of facts is for the jury. Tennessee Valley Appliances, Inc. v. Rowden, 24 Tenn. App. 487, 146 S. W. (2d) 845, 847; Ely v. Rice Bros. et al., 26 Tenn. App. 19, 167 S. W. (2d) 355-357; Meadows v. Patterson, 21 Tenn. App. 283, 109 S. W. (2d) 417.

■ It is so well settled in Tennessee that all the Courts and lawyers understand that the verdict of the jury approved by the Trial Court, if there is any material and competent evidence to support the verdict in a civil case, will not be disturbed by the Appellate Courts in the absence of some error committed by the Trial Judge which is found to effect the verdict.

■ It is also fundamental that where the material evidence is such that the minds of reasonable men might differ upon the issues involved in civil suits, no verdict should be directed by the Trial Court, but the question should be submitted to the jury, and as has been said in very recent opinions by the Appellate Courts when there is a doubt in the mind of the Trial Court upon mo-

tions for directed verdict, it is a better practice to let the case go to the jury.

The exhibits filed with this record reveals that 18 loads of cans were hauled by Waddell Brothers' truck, as shown by the invoices from August 5, 1955, to September 1, 1955, over a period of 27 days inclusive. A record of the calendar year 1955 shows that there were four Sundays and four Saturdays during that period, and there are no invoices shown on either Sunday or Saturday, so that it would appear that this hauling of the cans represented by the 18 invoices was done in a period of 19 working days. These invoices were made up by representatives in the shipping area supervision of Proctor and Gamble Defense Corporation operating the Milan Arsenal at that time, each invoice is made to F. Perlman & Company, 476 N. Manassas Street, Memphis, Tennessee. With each of the invoices there was made up a document as hereinbefore stated, designated "tally-out sheet" and each tally-out sheet was signed by a representative of the carrier or consignee. These tally-out sheets show that the Waddell Brothers' truck had three different drivers during said period of 19 days who were C. L. Waddell, Bobby Joe Hood and J. T. Yarbro. J. T. Yarbro signed six of these tally-out sheets, Waddell signed three of the tally-out sheets and Bobby Joe Hood signed nine. It appears that C. L. Waddell drove the truck on the first two loads and the fourth load, J. T. Yarbro drove the truck on the 3rd, 5th, 6th, 16th, 17th and 18th loads and that Bobby Joe Hood drove the truck on the 7th consecutively through the 15th load, so that these tally-out sheets attached to each invoice have been signed by the respective drivers of the Waddell trucks as the "carrier's or consignee's representative".

These words in quotation are written below the signature on each tally-out sheet with typewriter. Thus it would appear that the truck drivers, including the one involved on the day of the accident, signed these tally-out sheets in a sort of dual capacity, which is to say that apparently they didn't know whether they were the representatives of the carrier owner of the truck or of the consignee, or whether Waddell or F. Perlman were being represented each in a dual capacity. These tally-out sheets and invoices, together with the checks issued to Waddell Brothers in payment under the contract, are exhibited in the proof, identified by the Trial Judge and filed as one batch of exhibits. All the checks are endorsed by one of the Waddells for Waddell Brothers, and every check is drawn on the account of Southern Tin Compress Corporation to the Thomas Street Branch of the Union Planters National Bank in Memphis.

While the truck used to make these hauls had the words, "Leased to F. Perlman & Company" set out boldly on the body thereof, there is dispute between the witness Eugene Waddell and George Perkins with respect to who authorized that designation put on the truck. Waddell said that Perkins did and Perkins said he did not. Eugene Waddell says the truck and the driver were leased to Perlman and George Perkins says there was no such lease.

Eugene Waddell testifies that the representative drivers of the truck on the days of the haul were under the exclusive control of Perlman & Company. George Perkins says he supervised the whole job and that this is not true.

510

It is clear that the trucks entered the Arsenal area because they were there to haul the cans contracted to F. Perlman & Company and so it could be said, and the jury could have found that the truck entered the Arsenal on the so-called permit of F. Perlman & Company. The proof being that the driver had to identify himself at the gate of the Arsenal as being there for the purpose of hauling away the property purchased by F. Perlman & Company. A clear inference may be drawn from the evidence introduced that each day's haul,— that is as to dates and hours, was directed by F. Perlman & Company's representative.

Though Eugene Waddell testified that Perlman could have used the truck to haul any other product, it is clear from this record that the employment contract did not so contemplate, but the proof to the contrary is not sufficient to discredit this witness.

The facts set out, which are in dispute by the evidence, as well as the ones not in dispute, are fairly shown by numbers on pages 8 and 9 of this opinion.

No driver of the truck testified in this case except C. L. (Cullen) Waddell and he seems to have known but little about the contract or agreement. Neither Yarbro nor Hood testified in the case.

Now with the dispute in the testimony of Perkins and Eugene Waddell, together with the apparent dual capacity in which the driver of the truck signed the tally-out sheets, and the loose way and manner that this transaction was carried out by both parties, certainly makes a situation wherein the minds of reasonable men might disagree on the fact of whether or not Yarbro at the time of the accident which resulted in the injury, was the

agent or employee of Waddell Brothers or was the agent or employee under the control of F. Perlman & Company. To so determine is in the province of the jury. It appears to be a somewhat disjointed oral contractual agreement on the part of the truck owners, as well as the purchasers and consignees of the cans being hauled, and of course the Appellate Courts cannot determine a matter on a preponderance of the evidence in civil cases. That is a question for the jury.

We have carefully examined the authorities relied upon by the defendant, F. Perlman & Company. The principal one is that of the case of E. T. & W. N. C. Transp. Co. v. Virginia Surety Co., D.C., 129 F. Supp. 305 and the authorities therein cited. The case is in fact a controversy between the insurance carriers of their respective assureds. One of the assureds, E. T. & W. N. C. is certificated both as interstate and intrastate carriers. Wade H. Carter was the owner of the truck involved in the accident and was engaged and on a one day trip at the request of E. T. & W. N. C. to get a truck load of freight,—not belonging to E. T. & W. N. C., but for other consignees and supposed to be transported by that certificated carrier, and was paid for the one trip or was employed only for the one trip. Nothing appeared on the tractor or truck of Carter to show that it was leased to E. T. & W. N. C. under any sort of an agreement.

That lawsuit involved the application to the facts of that case set forth by the exceptions in the insurance contract of Carter when the truck was being used other than on the business designated in the insurance contract. The policy contained the provision "The purposes for which the automobile is to be used are hauling

beer (Distributor)." It also contained the following exclusion:

"This policy does not apply: (b) under any of the coverages, to liability assumed by the insured under any contract or agreement."

Furthermore, the claimed lease contained the following provision:

"The lessor agrees that, he the lessor, shall pay all taxes for the use of the highway and furnish all fuel and oil and labor necessary for the operation of vehicles covered by this agreement, and will be liable for all personal injury or property damage, and shall carry all public liability and property damage insurance required by Federal or State laws and regulations."

It was not insisted in that case nor shown that any beer was being hauled by the involved truck at the time of the involved accident, but it was hauling general freight. The question of independent contractor is discussed in the case and it is said in the lease under which the independent contractor relationship of the plaintiff, E. T. & W. N. C. Transportation Company with Carter, the owner of the truck, did not create E. T. & W. N. C. the independent contractor and that when its insurance carrier had paid for it, the damage which resulted in the collision of the Carter truck, injuring a person with whom the settlement had been made, it was entitled to recover from the insurance carrier of Carter. We do not think the facts involved justify us to apply the opinion in that case as controlling the facts in the instant case.

Therefore, the Court feels that it must find that there is evidence which would have justified the jury in deciding this case in favor of F. Perlman & Company, and had it done so, there would have been evidence upon which its verdict would have to be sustained.

There was no exclusive contract, under the alleged lease, that all the cans purchased by F. Perlman from the Milan Arsenal or Proctor & Gamble operating same, were to be transported by Waddells. Unquestionably from a review of all the proof and the inferences to be drawn therefrom, either the Waddells or F. Perlman could have terminated the alleged lease agreement at the end of any one trip. The record is undisputed that many of the cans purchased by F. Perlman from Milan Arsenal were hauled or transported by others than the Waddells, during the same period of time while the Waddells' truck was being used for that purpose.

The jury having found the facts against F. Perlman & Company, and that verdict having the approval of the Trial Court, we feel constrained to and do overrule the assignments of error, affirm the verdict of the jury and the judgment of the Court thereon, and judgment will be entered here in favor of the plaintiff below, Jimmy Gillian and against the defendant below, F. Perlman & Company in the amount of $7000.00, being the combined judgment for physical injury damages and property damage, together with interest thereon from the date the motion for new trial was overruled, January 21, 1961, and all costs of the case.

Carney and Bejach, JJ., concur.