Emily ZIMMERMAN, Personal Representative of the Estate of Daniel P. McCOY, deceased, and Guardian of the Sole Surviving Heir at Law, Plaintiff/Appellant,

v.

ELM HILL MARINA, L & R Incorporated d/b/a Elm Hill Marina, Defendant/Appellee.

and

Ed Rafalowski, individually and d/b/a Elm Hill Marina, Brentwood Bodyguard and Security, Inc., Roy Tanner, Tommy Thompson, Oliver J. Thompson, Ronny J. Thompson, and Gary L. Thompson, Defendants.

Court of Appeals of Tennessee, Western Section, at Nashville.

May 1, 1992.

Application for Permission to Appeal Denied by Supreme Court Aug. 24, 1992.

John Marston Richard, Jr., Nashville, for plaintiff/appellant.

Patricia R. Young, Stephen R. Butler, Nashville, for defendant/appellee.

George Dean, Nashville, for defendants, except Rafalowski.

FARMER, Judge.

Plaintiff, Emily Zimmerman, appeals from the trial court's order granting the defendant Elm Hill Marina's motion for summary judgment. Also named as defendants are Ed Rafalowski, Individually and d/b/a Elm Hill Marina, L & R Incorporated d/b/a Elm Hill Marina, Brentwood Bodyguard and Security, Inc., Roy Tanner, Tommy Thompson, Oliver J. Thompson, Ronny J. Thompson, and Gary L. Thompson. Under T.R.C.P. 54.02, the trial judge directed the entry of a final judgment as to Plaintiff's claim against Elm Hill Marina.

Elm Hill Marina entered into a lease agreement with the Secretary of the Army for the Marina to operate a business within the J. Percy Priest Dam and Reservoir Project Area. The lease, which authorized the Marina to furnish docking facilities for privately owned boats, prohibited the Marina from using the premises or permitting them to be used for "any illegal or immoral business or purpose" and from permitting upon the premises "any activity which would constitute a nuisance."

Under a separate agreement, the defendant Brentwood Bodyguard and Security, Inc., provided security services for the Marina. The defendant Roy Tanner was employed by the security company as a guard.

At about 10:30 a.m. on Sunday, March 26, 1989, Roy Tanner, while on duty at the Marina, observed Plaintiff's decedent, Dr. Daniel P. McCoy, go from the parking lot to his boat. According to Mr. Tanner, Dr. McCoy was staggering and did not have good control of his faculties. Dr. McCoy fell while getting out of his car, while crossing the parking lot, and again while approaching the Marina ramp. Dr. McCoy then crawled out the pier to his boat and passed out on its bow. Mr. Tanner followed Dr. McCoy to make sure he did not fall in the water and drown. Mr. Tanner then returned to his normal duties.

Another witness observed Dr. McCoy lying on the deck of his boat at about 11:30 a.m. the same day. The witness stated that Dr. McCoy appeared to be intoxicated in that when he tried to sit up, he would fall over and hit his head on the deck. The witness also reported that at about 3:45 p.m. he saw Dr. McCoy's keys, t-shirt, and newspaper, but he did not see Dr. McCoy.

On Monday, March 27, 1989, Dr. McCoy's body was found in Percy Priest Lake. An autopsy revealed that his death was caused by drowning and that his blood alcohol level was 0.26%.

Plaintiff, the personal representative of Dr. McCoy's estate and the guardian of his sole surviving heir at law, filed this lawsuit against the defendants for Dr. McCoy's death. Plaintiff's theory of liability as to the Marina was predicated on the argument that the lease agreement between the Marina and the Secretary of the Army created a duty to Dr. McCoy in tort. Specifically, Plaintiff argued that the duty was not to permit the premises to be used for any illegal purpose and not to permit upon the premises any nuisance. Because Dr. McCoy's level of intoxication was illegal and constituted a nuisance, Plaintiff reasoned, the Marina breached its duty to Dr. McCoy by failing to deny him access to the Marina and, thus, proximately caused his death. Further, Plaintiff argued that the Marina was liable under the theory of respondeat superior in that the Marina's agents, the security company and Roy Tanner, breached the aforementioned duty.

On appeal, Plaintiff presents the following issues for review:

I. Whether the trial court erred in dismissing plaintiff's claim of negligence against [the] Marina based on the duties springing from the lease agreement between the Marina and the federal government.

II. Whether the trial court erred in dismissing plaintiff's claim of negligence against [the] Marina based on the theory of respondeat superior.

The Marina raises the additional issue of whether the trial court erred in denying the Marina's motion to dismiss the appeal due to Plaintiff's abandonment of her appeal.

■ Because we conclude that Plaintiff's second issue concerning the theory of respondeat superior is dispositive of this appeal, the Court need address only this issue.

This Court has held that "the doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the injury resulting from the wrong." *Haupt v. Cincinnati, N.O. & T.P. Ry. Co.*, 34 Tenn.App. 1, 10, 232 S.W.2d 598, 602 (1950). *See also East Tennessee & Western North Carolina Motor Transp. Co. v. Brooks*, 173 Tenn. 542, 546, 121 S.W.2d 559, 561 (1938). Ordinarily, an employer is not liable for the negligence of an independent contractor. *Carr ex rel. Carr v. Carr*, 726 S.W.2d 932, 933 (Tenn.App.1986).

In determining liability under the theory of respondeat superior, the courts have recognized the decisive question to be whether the defendant had the power or right to control the wrongdoer's specific conduct or manner of doing work. *Haupt*, 34 Tenn. App. at 11, 232 S.W.2d at 602; *Knight v. Hawkins*, 26 Tenn.App. 448, 455, 173 S.W.2d 163, 166 (1941). The question of control is one of fact, and each case must depend on its own facts. *Knight*, 26 Tenn. App. at 455, 173 S.W.2d at 166. Factors considered by this Court have included, but are not limited to, whether the defendant paid the worker's salary and Social Security taxes; whether the defendant provided the worker with employee benefits, such as an optional retirement fund; and whether the defendant had the power to terminate the worker's employment at any time. *Id.* at 454–55, 173 S.W.2d at 166. *See also Haupt*, 34 Tenn.App. at 11, 232 S.W.2d at 602.

In support of its motion for summary judgment, the Marina submitted the affidavit of its president, Edward C. Rafalowski. In his affidavit, Mr. Rafalowski stated that the Marina entered into a contract with the security company to provide security services for the Marina on an independent contractor basis. Additionally, he stated that the Marina did not control the manner in which the security guard performed his duties nor did it pay the security guard. Instead, pursuant to the contract, the Marina paid the security company, which in turn paid the security guard.

Plaintiff filed a memorandum in opposition to the Marina's motion for summary

judgment. In her memorandum, Plaintiff neither contradicted the affidavit of Mr. Rafalowski nor filed opposing affidavits or depositions thereto. On appeal, Plaintiff chooses to rely on her pleadings and on the written contract between the Marina and the security company. Although this contract clearly specifies that the security company is an independent contractor, Plaintiff points to provisions which state that the Marina will set the schedule of the hours and numbers of guards needed, that the Marina will make payments to the security company, and that the security guards will perform their services pursuant to guidelines furnished by the Marina. We note, however, that this last provision reiterates that the security company and its guards are independent contractors.

As this Court stated in *Owen v. Stanley,* 739 S.W.2d 782 (Tenn.App.1987),

A motion for summary judgment goes to the merits of a case and should not be ignored or treated lightly. *Fowler v. Happy Goodman Family,* 575 S.W.2d 496, 498 (Tenn.1978); *Ferguson v. Tomerlin,* 656 S.W.2d 378, 382 (Tenn.Ct.App. 1983). Thus, Tenn.R.Civ.P. 56.05 warns the opponent of a summary judgment motion not to "rest upon the mere allegations or denials of his pleadings." When faced with a motion for summary judgment, a party should respond by affidavit or by otherwise setting forth facts showing that there is a genuine issue of fact.

A motion for summary judgment can put the plaintiff's case to the test. After a plaintiff has been given a reasonable opportunity to substantiate its claims, a summary judgment may be entered if the plaintiff has failed to establish an essential element of his case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, [323], 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Moman v. Walden,* 719 S.W.2d 531, 533 (Tenn.Ct.App.1986).

739 S.W.2d at 787.

Plaintiff has failed to respond by affidavit or otherwise setting forth facts which would show that either the security company or security guard was an employee of the Marina. Once the Marina filed its affidavit demonstrating an independent contractor relationship, Plaintiff's reliance on her pleadings and the security agreement was insufficient to create a genuine issue of fact regarding an essential element of her claim, the theory of respondeat superior. Further, in her amended complaint Plaintiff alleged that Roy Tanner was an employee of the security company, and the Marina admitted this fact in its answer. Since this fact was admitted, Plaintiff cannot now take a position to the contrary. Under these circumstances, we hold that the trial court did not err in granting the Marina's motion for summary judgment. In view of this holding, all other issues are pretermitted.

The judgment of the trial court is affirmed. Costs of this appeal are taxed to the appellant for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.