

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 15, 2017 Session

## JOE PATTON ROGERS, ET AL. v. BRADLEY DEAN HADJU, ET AL.[1]

**Appeal from the Circuit Court for Dyer County**
**No. 2014-CV-101   William B. Acree, Senior Judge**

_____

### No. W2016-00850-COA-R3-CV

_____

Appellants filed this lawsuit against Appellees for damages resulting from the alleged negligence of Appellees' subcontractor. The trial court granted summary judgment in favor of Appellees, ruling that they could not be vicariously liable for the subcontractor's negligence because the uncontroverted facts conclusively established that the subcontractor was an independent contractor. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Christi L. Dalton and Jack D. Lowery, Lafayette, Tennessee, and Christopher Beauchamp, Lebanon, Tennessee, for the appellants, Joe Patton Rogers and Judy Rogers.

Nathan E. Shelby, Brandon J. Stout, and Addie M. Wilson, Jackson, Tennessee, for the appellees, Kerr Brothers & Associates, Inc. and Traf-Mark Industries, LLC.

Matthew W. Willis and Lacee North Hudspeth, Dyersburg, Tennessee, for the appellee, Ford Construction Company.


## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

_____

[1] Although the defendant's last name is spelled "Hadju" in the plaintiffs' complaint and in the style of this case, the defendant stated in his answer to the complaint that "Hajdu" is the correct spelling. We will therefore use that spelling in this opinion.

Ford Construction Company ("Ford Construction") entered into a contract with the Tennessee Department of Transportation to perform construction on U.S. Highway 412 in Dyer County, Tennessee. Ford Construction entered into a subcontract with Traf-Mark Industries, LLC ("Traf-Mark") for a portion of the work. Traf-Mark then entered into a subcontract with Kerr Brothers and Associates, Inc. ("Kerr Brothers"). Kerr Brothers then entered into a subcontract with Randy Hodges d/b/a RDH Contracting ("RDH Contracting").

On December 19, 2013, employees of Ford Construction and RDH Contracting were working in a cordoned off portion of the construction site when an employee of Ford Construction, Joe Rogers, while attempting to cross a section of the highway to reach his work site, was struck by a truck that was owned by RDH Contracting and being backed up by one of its employees, Bradley Hajdu. The accident caused Mr. Rogers to suffer permanent debilitating injuries.

On December 16, 2014, Mr. Rogers and his wife, Judy Rogers (together, "Appellants"), filed a complaint against Traf-Mark, Kerr Brothers, RDH Contracting, and Mr. Hajdu in the Dyer County Circuit Court. The complaint alleged that Mr. Hajdu was operating the truck negligently when it hit and ran over Mr. Rogers. The complaint further alleged that Traf-Mark, Kerr Brothers, and RDH Contracting were vicariously liable for Mr. Hajdu's negligence because he was acting in the scope of his employment with them at the time of the incident. In May 2014, the trial court entered a consent order allowing Ford Construction to intervene in the lawsuit to protect its worker's compensation subrogation lien against any recovery by Mr. Rogers.

Following a period of discovery, Traf-Mark and Kerr Brothers (hereinafter, "Appellees") filed a motion for summary judgment. In the motion and supporting memorandum, Appellees argued that they were not liable for Mr. Hajdu's negligent acts because RDH Contracting and Mr. Hajdu were independent contractors, rather than agents or employees, of Appellees. In support of that assertion, Appellees submitted the affidavits of Traf-Mark's president, Mike Tabor, and Kerr Brothers' president, Robert Mallory, Jr. The affidavits stated that Traf-Mark entered into a subcontract with Kerr Brothers, who then entered into a subcontract with RDH Contracting to perform work on an independent contractor basis. They further stated that Mr. Hajdu was an employee of RDH Contracting and that Appellees did not pay RDH Contracting's employees or control the manner in which they performed their work. Instead, pursuant to their contract, Kerr Brothers paid RDH Contracting, who in turn paid its employees. Appellees also submitted the contracts between Traf-Mark and Kerr Brothers and between Kerr Brothers and RDH Contracting.

In response to the motion for summary judgment, Appellants asserted that a trial was necessary to resolve disputed facts regarding Appellees' relationship with RDH Contracting and Mr. Hajdu. In support of that assertion, Appellants cited the following provisions of the contract between Kerr Brothers and RDH Contracting:

> [RDH Contracting] shall commence the Work when directed by [Kerr Brothers], and shall prosecute the Work at whatever rate of progress and whatever sequence as [Kerr Brothers] may direct. . . . [RDH Contracting] shall keep the Work area clean, neat and orderly, to the satisfaction of [Kerr Brothers]. . . . [Kerr Brothers] shall have the sole authority to determine the acceptability or unacceptability of the Work, to reject unacceptable Work, and any decision by [Kerr Brothers] as to any aspect of the Work shall be final.
>
> . . .
>
> This Subcontract will terminate, or the Work will be suspended, to the extent that: (i) the Contract terminates or the Owner suspends the Work, in whole or in part, or (ii) [Kerr Brothers] gives written notice to [RDH Contracting] that this Subcontract is terminated or the Work is suspended, in whole or in part. In any of such events, [RDH Contracting] shall immediately suspend or terminate work as appropriate.
>
> . . .
>
> [RDH Contracting] shall, before commencing the Work and at any time requested by [Kerr Brothers], furnish [Kerr Brothers] a written list of the names of all subcontractors, suppliers and any other entities that may furnish labor or materials in the prosecution of the Work. In any subcontract or contract to procure materials or equipment [RDH Contracting] shall include a provision allowing for termination at [RDH Contracting's] convenience without liability to [Kerr Brothers] or Owner, which [RDH Contracting] shall promptly exercise if requested by [Kerr Brothers].

Appellants argued that those provisions demonstrated Kerr Brothers' right to control the work of RDH Contracting and its employees as well as its right to terminate RDH Contracting for any reason. They therefore argued that the contract, on its face, showed that RDH Contracting was an agent of Kerr Brothers such that Kerr Brothers could be liable for the negligence of RDH Contracting and its employees. Appellants cited similar provisions of the contract between Traf-Mark and Kerr Brothers, which they argued showed that Kerr Brothers was an agent of Traf-Mark such that Traf-Mark could be held

liable for the negligence of Kerr Brothers and its sub-agents (RDH Contracting). Appellants did not submit any affidavits or other evidence in response to Appellees' motion for summary judgment.

On March 28, 2016, following a hearing, the trial court entered an order granting Appellees' motion for summary judgment. The trial court explained that the contracts between the parties were unambiguous and could not be interpreted to establish an agency relationship between Appellees and RDH Contracting or its employees. As such, the trial court held that RDH Contracting and Mr. Hajdu were independent contractors and Appellees could not be held liable for their negligence. The trial court later certified its summary judgment order as final pursuant to Tennessee Rule of Civil Procedure 54.02, and the Appellants timely filed a notice of appeal to this Court.[2]

## ISSUE

Appellants present the following issue for review, as stated in their brief:

1. Given that the parties are in dispute over whether the Defendant [Hajdu] was an agent or independent contractor of the Appellees Traf-Mark and Kerr Bros, did the trial court err when it granted summary judgment in favor of the Appellees?

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. On appeal, we review the trial court's ruling on a motion for summary judgment de novo with no presumption of correctness. *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination regarding whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Id*.

When the party moving for summary judgment will not have the burden of proof at trial, it may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish

---

[2] On April 28, 2016, the trial court ordered the underlying case be stayed pending resolution of its summary judgment order.

- 4 -

the nonmoving party's claim or defense. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). If the moving party fails to meet its initial burden of production, then the nonmoving party's burden is not triggered, and the court should dismiss the motion for summary judgment. *Town of Crossville Hous. Auth. v. Murphy*, 465 S.W.3d 574, 578-79 (Tenn. Ct. App. 2014) (citing *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008)). If, however, the moving party makes a properly supported motion for summary judgment, then the burden of production shifts to the nonmoving party to demonstrate the existence of a disputed fact requiring trial. *Id.* at 578 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

To survive a properly supported motion for summary judgment, the nonmoving party "'may not rest upon the mere allegations or denials of its pleading,' but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Rye*, 477 S.W.3d at 265 (quoting Tenn. R. Civ. P. 56.06). The nonmoving party must demonstrate the existence of specific facts in the record that could lead a rational trier of fact to find in favor of the nonmoving party. *Id.* If adequate time for discovery has passed and the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial, then the motion for summary judgment should be granted. *Id.* As such, even when the determinative issue is ordinarily a question of fact for the jury, summary judgment is appropriate if the uncontroverted facts and inferences to be drawn from the facts make it so clear that a reasonable person can reach only one conclusion. *White v. Lawrence*, 975 S.W.2d 525, 529-30 (Tenn. 1998).

## DISCUSSION

"Where one person has sustained an injury from the negligence of another, he must, in general, proceed against him by whose negligence the injury was occasioned." *Keller v. Fed. Bob Brannon Truck Co.*, 269 S.W. 914, 917 (Tenn. 1925) (quoting *King v. New York Cent. & Hudson River R.R. Co.*, 66 N.Y. 181, 184 (1876)). Nevertheless, the doctrine of respondeat superior permits a principal to be held liable for the negligent acts of its agent. *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 343 (Tenn. 2002). Consequently, a plaintiff may rely on the doctrine of respondeat superior to extend liability to an employer for the negligent acts of its employee when the employee was acting within the scope of his or her employment. *Russell v. City of Memphis*, 106 S.W.3d 655, 657 (Tenn. Ct. App. 2002). While an employer may be held liable for the negligence of its employee, however, they are generally not liable for the negligence of independent contractors. *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 384 (Tenn. 2002).

In cases requiring the classification of a person as an employee or an independent contractor, the nature of the relationship is determined by examining the agreement between the parties and the facts of the particular case. *See Youngblood v. Wall*, 815 S.W.2d 512, 516 (Tenn. Ct. App. 1991). Thus, while the parties' written agreement is a relevant factor, their conduct is also relevant. *Sodexho Mgmt., Inc. v. Johnson*, 174 S.W.3d 174, 180 (Tenn. Ct. App. 2004). In determining whether an individual is an employee or an independent contractor, Tennessee courts are guided by the following factors: (1) the right to control the conduct of the work, (2) the right of termination, (3) method of payment, (4) whether or not the worker furnishes his own helpers, (5) whether or not the worker furnishes his own tools, (6) self-scheduling of working hours, and (7) freedom to render services to other entities. *Goodale v. Langenberg*, 243 S.W.3d 575, 582-83 (Tenn. Ct. App. 2007). Those factors, however, are not absolute, and no single factor is conclusive. *Id*. at 583. While the "right to control" is the primary test, it is not exclusive, and the entire relationship must be examined. *Id*.

Appellees argue the trial court's grant of summary judgment should be affirmed in light of this Court's opinion in *Zimmerman v. Elm Hill Marina*, 839 S.W.2d 760 (Tenn. Ct. App. 1992). In that case, the plaintiff sued a marina for damages caused by the alleged negligence of its security guard. *Zimmerman*, 839 S.W.2d at 762. The marina filed a motion for summary judgment based on its assertion that the security guard was an independent contractor. *Id*. In support of the motion, the marina filed the affidavit of its president, which stated that the marina entered into a contract with a security company for security services on an independent contractor basis. *Id*. The affidavit stated that the marina did not control the manner in which the security company's guards performed their duties nor did it pay the security guards. *Id*. Instead, pursuant to the contract, the marina paid the security company, which in turn paid the security guards. *Id*. In response to the motion, the plaintiff relied solely on her complaint and the contract between the marina and security company. *Id*. at 763. She cited provisions of the contract that stated the marina would control the hours and number of security guards, that the marina would make payments to the security company, and that the security guards would perform services pursuant to the marina's guidelines. *Id*. The trial court granted the marina's motion for summary judgment, and the plaintiff appealed. *Id*. at 761. On appeal, this Court held that the plaintiff's response failed to set forth facts, by affidavit or otherwise, showing that either the security company or the security guard was an employee of the marina. *Id*. at 763. The Court explained that the plaintiff's reliance on the contract was insufficient to create a genuine issue of material fact once the marina set forth facts showing an independent contractor relationship. *Id*. In doing so, the Court noted that the contract between the marina and the security company specifically referred to the security company and its guards as independent contractors. *Id*.

- 6 -

For their part, Appellants contend that this case is distinguishable from *Zimmerman*. In support of that argument, they point out that, unlike the contract between the marina and security company in *Zimmerman*, the contracts in this case do not refer to RDH Contracting or its employees as independent contractors. They also argue that the contracts in this case afford Appellees greater control over RDH Contracting and its employees than the contracts in *Zimmerman* afforded the marina over the security company and its guards.

We are not persuaded by Appellants' attempt to distinguish this case from *Zimmerman*. Although the contracts in this case do not define RDH Contracting and its employees as independent contractors, they do not define them as employees either. Even if they did, however, the terms used in a contract are not determinative of whether a party is an independent contractor or an employee. *Carbide & Carbon Chems. Corp. v. Carson*, 239 S.W.2d 27, 33 (Tenn. 1951). Additionally, the contracts in this case do not afford Appellees the sort of control over RDH Contracting and its employees necessary to establish an agency relationship. The mere fact that the contractor reserves the right to supervise the work to ensure that the end result conforms to the plans does not make the subcontractor an employee when the contractor does not control the actual conduct or method of the work. *Smart v. Embry*, 348 S.W.2d 322, 324-25 (Tenn. 1961). Here, Appellees retained control over the commencement, speed, and sequence of RDH Contracting's work to ensure that it conformed to the project as a whole, but they did not retain control over the actual conduct or method of RDH Contracting's work. Likewise, the fact that a contractor may breach its contract with a subcontractor by terminating its services is not equivalent to the unconditional right to terminate the subcontractor or its employees without cause. *See Wilson v. Thompson Const. Co.*, 86 S.W.3d 536, 542 (Tenn. Ct. App. 2001). Here, Appellees did not retain a unilateral right to hire or terminate RDH Contracting's employees. Moreover, application of the remaining factors set forth above to the uncontroverted evidence only supports the conclusion that RDH Contracting and its employees were independent contractors. Appellees did not pay RDH Contracting or its employees. Rather, Kerr Brothers paid RDH Contracting, who in turn paid its employees. RDH Contracting was required to "procure and furnish all materials, labor, supervision, equipment, facilities, licenses, and permits" necessary to perform the work. Finally, the contracts between the parties did not prohibit RDH Contracting from self-scheduling its hours or rendering services to other entities.

Ford Construction also submitted a brief on appeal in which it cites the Tennessee Supreme Court's opinion in *Federal Insurance Co. v. Winters*, 354 S.W.3d 287, 295 (Tenn. 2011), for the proposition that the non-delegable, contractual duty to perform work in a "careful, skillful, diligent, and workmanlike manner" gave Appellees additional control over RDH Contracting's work. As Ford Construction acknowledges, however, that case involved a claim for breach of contract, not a claim for negligence. *Winters*,

354 S.W.3d at 290. Indeed, the *Winters* Court expressly stated that the imposition of that separate contractual duty does not vitiate the common law rule that employers are generally not liable for the negligence of their independent contractors. *Id*. at 295 ("Because this non-delegable duty arises from the contract entered into by the contractor, the rule immunizing a contractor from the acts of an independent subcontractor has no application to these separate contractual responsibilities."). As such, we conclude that it has no bearing on our analysis in this case.

Having reviewed the record and considered the parties' arguments, we conclude that the trial court's decision to grant summary judgment in favor of Appellees was appropriate. Appellees filed a properly supported motion for summary judgment in which they demonstrated that RDH Contracting and its employees were independent contractors. In response, Appellants failed to demonstrate the existence of specific facts that could lead a rational trier of fact to find in their favor. As such, the uncontroverted facts conclusively established that RDH Contracting and its employees were independent contractors.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed, and this case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of this appeal are taxed to the appellants, Joe Patton Rogers and Judy Rogers, and their sureties, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE