IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 28, 2017 Session

**ALFONZIA BILES, ET AL. v. TIFFANY ROBY**

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001050-15     Gina C. Higgins, Judge**

---

**No. W2016-02139-COA-R3-CV**

---

This case involves residential property that was purchased after a foreclosure.  The purchaser filed this detainer action against the original homeowners, who refused to vacate the property.  The general sessions court ruled in favor of the purchaser, and after a de novo trial in circuit court, the circuit court ruled in favor of the purchaser as well.  We do the same.  The decision of the circuit court is hereby affirmed and remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Drayton Durell Berkley, Memphis, Tennessee, for the appellants, Alfonzia Biles, and Tonya Biles.

Brandon Franklin McNary, Memphis, Tennessee, for the appellee, Tiffany Roby.

**OPINION**

**I. FACTS & PROCEDURAL HISTORY**

Alfonzia and Tonya Biles constructed a home in 2005.  They executed a deed of trust and promissory note for $223,840.  The original lender was MILA, Inc., a Washington corporation, but the deed of trust was subsequently assigned to US Bank, N.A.  Mr. and Mrs. Biles admittedly fell behind on their mortgage payments, and US Bank foreclosed on the property.  The foreclosure sale occurred in October 2014, and US Bank purchased the property.  US Bank recorded its substitute trustee's deed in November 2014.  In December 2014, US Bank filed a detainer action against Mr. and

Mrs. Biles in Shelby County Circuit Court, as they refused to vacate the property.

In February 2015, Tiffany Roby purchased the property from US Bank for $189,000. US Bank conveyed the property to Ms. Roby by special warranty deed, which was promptly recorded. As Mr. and Mrs. Biles remained in possession of the property, Ms. Roby filed a detainer action against them in Shelby County General Sessions Court. Ms. Roby's detainer action was heard on March 11, 2015, and the general sessions court found that she was entitled to possession of the property.

The next day, Mr. and Mrs. Biles filed a petition for writs of certiorari and supersedeas seeking de novo review in Shelby County Circuit Court. They asserted that Ms. Roby's detainer action should be dismissed on the basis of prior suit pending due to the detainer action previously filed by US Bank, which still remained pending at that time. Mr. and Mrs. Biles also asserted the defense of wrongful foreclosure and alleged numerous violations of provisions of the deed of trust and federal regulations. For these various reasons, Mr. and Mrs. Biles argued that "all of these transfers, assignments, or endorsements are void and of no effect," and therefore, Ms. Roby never acquired valid title. US Bank subsequently nonsuited its detainer action against Mr. and Mrs. Biles.

The circuit court ordered the clerk to issue both writs, staying execution of the general sessions court's judgment in favor of Ms. Roby pending further orders of the circuit court. The case was tried in circuit court on September 2, 2015. Three witnesses testified: Mrs. Biles, Ms. Roby, and the vice president of a bank, who was tendered by Ms. Roby as an expert witness in the area of mortgage banking. At the conclusion of the testimony, the trial court took the matter under advisement. The trial judge announced her ruling in favor of Ms. Roby on February 15, 2016, and entered a written order on March 31, 2016.[1] For reasons that will be discussed in detail below, the trial court rejected each of the arguments set forth by Mr. and Mrs. Biles to challenge the validity of the foreclosure, assignments, and instruments. The trial court concluded that US Bank validly acquired title to the property and that title to the property ultimately vested in the subsequent purchaser, Ms. Roby. The court ruled that Ms. Roby was entitled to possession of the property as the valid owner of the fee simple interest in the property.

Mr. and Mrs. Biles timely filed a motion to alter or amend, which was denied. They subsequently filed a notice of appeal to this Court.

---

[1]The trial court's written order was entered six months after the conclusion of the bench trial. The reason for this delay is not apparent from the record. Tennessee Supreme Court Rule 11(III)(c) provides that "[n]o case may be held under advisement in excess of sixty days[.]"

## II. ISSUES PRESENTED

Mr. and Mrs. Biles present the following issues, as we perceive them, for review on appeal:

1.  Was the foreclosure sale void due to the lack of evidence that US Bank transmitted a valid acceleration letter to Mr. and Mrs. Biles;

2.  Was the foreclosure sale void due to the loan modification package submitted by Mr. and Mrs. Biles;

3.  Did Ms. Roby fail to establish her chain of title;

4.  Did US Bank have the right to enforce the promissory note;

5.  Is the note a negotiable instrument;

6.  Did Ms. Roby fail to establish that she was a bona fide purchaser;

7.  Was Ms. Roby in privity with US Bank such that her detainer action was barred by the prior suit pending doctrine;

8.  Was Ms. Roby's detainer action barred by the claim-splitting doctrine.

For the following reasons, we affirm the decision of the circuit court and remand for further proceedings.

## III. STANDARD OF REVIEW

A trial court's findings of fact from a bench trial are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *In re Estate of Ledford*, 419 S.W.3d 269, 277 (Tenn. Ct. App. 2013). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citation omitted). We review the trial court's resolution of legal questions de novo with no presumption of correctness. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014).

# IV. DISCUSSION

At the outset, we consider it helpful to review the procedural posture of this case. As noted above, this case originated as a detainer action filed in general sessions court, and the general sessions court ruled that Ms. Roby was entitled to possession of the property. An unsuccessful defendant in an unlawful detainer action in general sessions court has two alternative options for seeking de novo review in circuit court. *Gallatin Hous. Auth. v. Pelt*, No. M2015-01694-COA-R3-CV, 2017 WL 2172917, at *2 (Tenn. Ct. App. May 16, 2017), *perm. app. pending* (citing *Johnson v. Hopkins*, 432 S.W.3d 840, 845 n.5 (Tenn. 2013)). He or she can file a notice of appeal within ten days, or, within thirty days, he or she can petition the circuit court for writs of certiorari and supersedeas. *Id.* (citing Tenn. Code Ann. §§ 29-18-128, -129). "The writ of certiorari removes the case to the circuit court while the writ of supersedeas stays enforcement of the possession judgment." *Id.* (citing *Nashville Hous. Auth. v. Kinnard*, 207 S.W.2d 1019, 1020 (Tenn. 1948)). Together, the writs of certiorari and supersedeas enable an unsuccessful defendant to remain in possession of the premises while seeking de novo review. *Id.* at *6.

Here, Mr. and Mrs. Biles sought review by way of a petition for writs of certiorari and supersedeas. Thus, after the trial court issued the writs, it retried the detainer action de novo. When a detainer action is "brought against the maker of a deed of trust who, after default and foreclosure, refused to surrender possession of the property," the party seeking to gain possession by way of a summary detainer proceeding must rely on the action of "unlawful detainer." *CitiFinancial Mortg. Co. v. Beasley*, No. W2006-00386-COA-R3-CV, 2007 WL 77289, at *7 (Tenn. Ct. App. Jan. 11, 2007). On appeal, Mr. and Mrs. Biles do not argue that Ms. Roby failed to prove the elements of unlawful detainer, which are (1) constructive possession of the property and (2) subsequent loss of possession by the defendant's act of unlawful detainer. *BAC Home Loans Servicing v. Goodson*, No. M2014-02566-COA-R3-CV, 2016 WL 3752217, at *4 (Tenn. Ct. App. July 6, 2016) (*no perm. app. filed*); *Fed. Nat'l Mortg. Ass'n v. Daniels*, 517 S.W.3d 706, 712 (Tenn. Ct. App. 2015). Instead, they rely on various affirmative defenses. "[W]rongful foreclosure can be raised as an affirmative defense to an unlawful detainer action." *Boyce v. LPP Mortg. Ltd.*, 435 S.W.3d 758, 766 (Tenn. Ct. App. 2013).

We turn, then, to the violations alleged by the Biles in this case in support of their affirmative defense of wrongful foreclosure.

## A. Acceleration Letter

The first issue we address is whether the trial court should have held that the foreclosure sale was void due to the lack of evidence at trial regarding whether US Bank

4

transmitted a valid acceleration letter to Mr. and Mrs. Biles prior to foreclosure. The deed of trust executed by Mr. and Mrs. Biles contractually set forth the manner and content of the notice required to be given to them prior to acceleration or foreclosure. On appeal, Mr. and Mrs. Biles assert that Ms. Roby "did not provide any proof that US Bank transmitted a valid acceleration letter." They argue, "Roby never put on evidence that US Bank transmitted the acceleration letter required by paragraph 22 of [the] deed of trust, thus, the foreclosure auction is void and in turn Roby's special warranty deed is void."

This argument is misplaced, however, because it was not Ms. Roby's burden to prove that US Bank sent a valid acceleration letter to Mr. and Mrs. Biles prior to foreclosure. Mr. and Mrs. Biles were attempting to establish wrongful foreclosure, which, in this context, was an affirmative defense to the unlawful detainer action. *See Boyce*, 435 S.W.3d at 766; *CitiMortage, Inc. v. Drake*, 410 S.W.3d 797, 807-08 (Tenn. Ct. App. 2013). "[T]he burden of proving an affirmative defense is on the party asserting it." *Tenn. Farmers Mut. Ins. Co. v. Farrar*, 337 S.W.3d 829, 837 (Tenn. Ct. App. 2009). Moreover, we note that Mr. and Mrs. Biles alleged themselves, in their initial petition for writs of certiorari and supersedeas in circuit court, that "[o]n or about October 18, 2013, US Bank's agent transmitted a purported acceleration letter to Defendants." Factual statements in pleadings are judicial admissions that are conclusive against the pleader in the proceedings in which they are filed unless they have been amended or withdrawn. *Bobo v. City of Jackson*, 511 S.W.3d 14, 26 n.13 (Tenn. Ct. App. 2015); *McCord v. HCA Health Servs. of Tenn., Inc.*, No. M2014-00142-COA-R3-CV, 2015 WL 1914634, at *9 n.22 (Tenn. Ct. App. Apr. 27, 2015), *perm. app. denied* (Tenn. Oct. 15, 2015). Consequently, we find no merit in the assertion by Mr. and Mrs. Biles that the trial court should have held that the foreclosure sale was void due to the lack of evidence from Ms. Roby regarding an acceleration letter.

### B. *Modification Package*

Next, we turn to the issue regarding whether the foreclosure sale was void due to a loan modification package submitted by Mr. and Mrs. Biles prior to foreclosure. At trial, Mrs. Biles testified that she and her husband submitted a loan modification request in May 2014. She submitted as an exhibit a completed written application entitled, "Making Home Affordable Program Request for Mortgage Assistance." Mrs. Biles testified that she had "weekly communications" with her loan servicer after the application was submitted, but she did not describe the content of those conversations. On appeal, Mr. and Mr. Biles argue that because they submitted a loan modification application, "US Bank and its privies" violated federal law by initiating the foreclosure process without first denying or rejecting their modification request. As a result, they claim that the "foreclosure auction was void as repugnant to federal law."

The trial court "found no proof to indicate that the failure to close out a loan modification request created a violation [such] that this Court could not allow the foreclosure to go forward." The trial court did not err in this conclusion. Mr. and Mrs. Biles rely on the federal regulation codified at 12 C.F.R. § 1024.41, which is entitled "Loss mitigation procedures." The first sentence of this regulation provides, "A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 C.F.R. § 1024.41(a). The referenced section 6(f) authorizes the recovery of damages from "[w]hoever fails to comply with any provision of this section." 12 U.S.C. 2605(f). However, courts have repeatedly rejected attempts to have a foreclosure sale declared void due to alleged noncompliance with this loan modification regulation. For instance, in *Upshaw v. Green Tree Servicing LLC*, No. 15-CV-13866, 2015 WL 9269136, at *3 (E.D. Mich. Dec. 21, 2015), the court explained:

> Plaintiffs allege that Defendants violated the Real Estate Settlement Procedures Act (RESPA), by proceeding with a foreclosure while Plaintiffs were being considered for foreclosure alternatives. RESPA grants relief in the form of monetary damages. 12 C.F.R. § 1024.41 ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."); 12 U.S.C. § 2605(f) (exclusively authorizing monetary relief to individual borrowers). Plaintiffs, however, seek a declaration that the foreclosure process is null and void, injunctive relief stopping the foreclosure and an order requiring Defendants to negotiate a loan modification, *none of which is available under RESPA*.
>
> . . . "An alleged irregularity in the loan modification process [] does not constitute an irregularity in the foreclosure proceeding." *Campbell v. Nationstar Mortgage*, 611 F. App'x 288, 294 (6th Cir. 2015) *cert. denied*, 136 S. Ct. 272 (2015). . . . As such, Plaintiffs claims of irregularities in the loan modification process do not give rise to an actionable wrongful foreclosure claim.

(Emphasis added.) *See also Houston v. U.S. Bank Home Mortg. Wisconsin Servicing*, 505 F. App'x 543, 546 n.3 (6th Cir. 2012) ("RESPA permits actual damages, plus costs and attorneys['] fees, as a remedy in this instance, but it does not contemplate that a court could set aside a sale."); *Hagan v. Citimortgage, Inc.*, No. 1:15-CV-454, 2016 WL 6275333, at *5 (W.D. Mich. Oct. 27, 2016) ("[t]here is no provision found in RESPA under which Plaintiff can seek to have foreclosure proceedings nullified") (quotation omitted); *Wiley v. CitiMortgage, Inc.*, No. 15-CV-11395, 2016 WL 8232835, at *2 (E.D. Mich. Jan. 11, 2016) (dismissing wrongful foreclosure claim alleging that a foreclosure sale was null and void for failure to provide notice that the plaintiffs were not eligible for loss mitigation options, as 12 C.F.R. 1024.41 and 12 U.S.C. § 2605(f)(1) "only provide[]

relief in the form of monetary damages"); *Aqeel v. CitiMortgage, Inc*., No. 114CV03685LMMCMS, 2015 WL 11439175, at \*10 (N.D. Ga. July 7, 2015) *adopted sub nom.* 2015 WL 11622450 (N.D. Ga. July 28, 2015) ("the principal relief sought by Plaintiff—to set aside the foreclosure sale—is unavailable to her under RESPA"); *Abhane v. Mabe*, No. A-14-CA-330-SS, 2014 WL 12480001, at \*2 (W.D. Tex. Aug. 5, 2014) ("nothing in either the regulation [12 C.F.R. § 1024.41] or § 2605 suggests a sale in violation of RESPA is void, or even that rescission of the sale is a remedy available to the homeowner under RESPA"); Alex S. Moe, *Against Accetturo and Beyond Bukowski: Litigating Notices in Illinois Foreclosures*, 48 Loy. U. Chi. L.J. 949, 1014 n.86 (2017) (observing that 12 C.F.R. § 1024.41 "does not provide the get-out-of-foreclosure-free card that borrowers might hope it would").

Based on the foregoing authority, we find no merit in the issue raised by Mr. and Mrs. Biles on appeal suggesting that the "foreclosure auction was void as repugnant to federal law" due to their submission of a loan modification request.

### C.    *The Substitute Trustee's Deed*

Next, we address whether Ms. Roby failed to sufficiently establish her chain of title at trial because the trial court never entered US Bank's substitute trustee's deed into evidence. Because of this singular omission, Mr. and Mrs. Biles claim that US Bank's title was not established, and therefore, Ms. Roby's title was not established either.

The trial court found that US Bank recorded its substitute trustee's deed in the register's office on November 10, 2014, and that ownership was divested from Mr. and Mrs. Biles and vested in US Bank. In their petition for writs of certiorari and supersedeas, Mr. and Mrs. Biles had alleged themselves, in their factual allegations, that "[o]n or about November 10, 2014, US Bank recorded its substitute trustee's deed." Ms. Roby admitted this factual allegation in her response to the petition. Because this fact was alleged by Mr. and Mrs. Biles and admitted by Ms. Roby, Mr. and Mrs. Biles cannot now take a position to the contrary. *See Zimmerman v. Elm Hill Marina*, 839 S.W.2d 760, 763 (Tenn. Ct. App. 1992). "[W]hen the allegations of a complaint are admitted, 'the subject matter thereof is removed as an issue, no proof is necessary[,] and it becomes conclusive on the parties.'" *Sakaan v. Fedex Corp., Inc*., No. W2016-00648-COA-R3-CV, 2016 WL 7396050, at \*4 (Tenn. Ct. App. Dec. 21, 2016) (*no perm. app. filed*) (quoting *Rast v. Terry*, 532 S.W.2d 552, 554 (Tenn. 1976)). Even still, at trial, Ms. Roby presented the testimony of an expert witness who testified that she had reviewed the records of the register's office and found the substitute trustee's deed in her review of the records. The record contains ample evidence to support the trial court's finding that US Bank recorded its substitute trustee's deed in the register's office on November 10, 2014.

### D. US Bank's Right to Enforce the Note and Foreclose

The trial court found that Mortgage Electronic Registration Systems ("MERS") was the nominee for MILA, Inc., and was the original beneficiary in the deed of trust. The trial court also found that MERS assigned the deed of trust to US Bank on September 12, 2011, and that the assignment from MERS to US Bank was valid. On appeal, Mr. and Mrs. Biles argue that the original lender, MILA Inc., "lost the power to assign the note in 2011," and therefore, the note was never "effectively assigned" to US Bank. Mr. and Mrs. Biles claim that MILA, Inc. "lost the power to assign" the note because they submitted as an exhibit at trial a document purportedly showing that MILA, Inc. was incorporated in the State of Washington with an "Expiration Date" of April 30, 2011, and an "Inactive Date" of August 1, 2011. As a result, they claim that US Bank had no right to enforce the note as an assignee (or alternatively as a third party beneficiary), and therefore, US Bank had "no standing to foreclose."

The only authority cited by Mr. and Mrs. Biles in support of their challenge to the assignment is the following statement in their brief: "In *Collier v. Greenbrier Developers LLC*, 358 S.W.3d 195 (Tenn. Ct. App. 2009), the Tennessee Court of Appeals held that an assignee stands in the shoes of the assignor if there is an effective assignment." We conclude that this is nothing more than a skeletal argument, and we deem this issue waived. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). "[P]arties must thoroughly brief the issues they expect the appellate courts to consider." *Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009). We decline to address the assertion that MILA Inc. "lost the power to assign" the note to US Bank such that US Bank lacked standing to foreclose.

### E. Negotiable Instrument

Next, Mr. and Mrs. Biles argue that the note they executed was not a negotiable instrument because, they claim, it was not an unconditional promise to pay a fixed sum of money, payable to bearer or order at a definite time, without any other instruction or undertaking. These issues were not raised before the trial court. The term "negotiable instrument" was used only once before the trial court, during closing argument by counsel for Mr. and Mrs. Biles, when he suggested that MILA, Inc. was required to sign the note in order to transfer the property. Mr. and Mrs. Biles never raised any of these arguments regarding the lack of an unconditional promise to pay a fixed sum, whether the note was payable to bearer or order at a definite time, or whether it contained other instructions or undertakings, and as a result, the trial court did not consider them. The

Tennessee Supreme Court has declined to consider constitutional arguments raised for the first time during closing arguments and "minimally addressed," concluding that such arguments are not properly raised and are waived on appeal. *In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009); *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001). We likewise conclude that the Biles' issue regarding whether the note was a negotiable instrument was late-raised, minimally addressed (at best), and waived on appeal. As a court of appeals, "we are limited in authority to the adjudication of issues that are *presented and decided* in the trial courts." *In re Adoption of E.N.R.*, 42 S.W.3d at 31-32. These issues regarding negotiable instruments were neither presented nor decided in the court below.

### F. *Bona Fide Purchaser*

Next, Mr. and Mrs. Biles claim that Ms. Roby cannot qualify as a "bona fide purchaser" because (1) she purchased the property without seeing the inside of it; and (2) Mr. and Mrs. Biles recorded a document entitled "Notice of Rescission" on the morning of the foreclosure auction by US Bank.[2] Mr. and Mrs. Biles argue that these facts prevent Ms. Roby from qualifying as a "bona fide purchaser" and obtaining title "free of any prior defects." They claim that without "bona fide purchaser" status, Ms. Roby "received her deed subject to all claims of Alfonzia and Tonya Biles against US Bank." However, we are not persuaded. Further inquiry regarding these two facts might have led Ms. Roby to discover that Mr. and Mr. Biles were unlawfully detaining the property in spite of the valid foreclosure sale. However, knowledge of these facts does not mean that Ms. Roby took defective title or that she is not now entitled to possession in this unlawful detainer action.

### G. *Prior Suit Pending*

Mr. and Mrs. Biles also argue that Ms. Roby's detainer action against them was barred by the doctrine of prior case pending because, when she filed her detainer warrant, US Bank's separate detainer action was still pending. After Mr. and Mrs. Biles asserted the doctrine of prior suit pending, US Bank nonsuited its detainer action.

"The defense of prior suit pending derives from the common law rule that a party

---

[2]The document entitled "Notice of Rescission" stated that Mr. and Mrs. Biles were "demand[ing] rescission of the promissory note, deed of trust, and a return of all payments of any type of kind tendered to [the loan servicer] or US Bank, N.A. or any predecessor servicer pursuant to 15 USC § 1635 and 15 USC § 1641(g)." However, 15 USC § 1635(e) states, "This section does not apply to-- (1) a residential mortgage transaction[.]" The trial court found that the Notice of Rescission was invalid, and Mr. and Mrs. Biles do not raise any issue on appeal regarding the validity of their Notice of Rescission. They simply claim that it provided constructive notice to Ms. Roby of their dispute with US Bank.

could have an action dismissed if there was a prior suit filed against her for the same claims in the same jurisdiction." *Cannon ex rel. Good v. Reddy*, 428 S.W.3d 795, 797 n.2 (Tenn. 2014). In its modern form, it requires proof of four elements:

> (1) the lawsuits must involve identical subject matter; (2) the lawsuits must be between the same parties or their privies; (3) the former lawsuit must be pending in a court having subject matter jurisdiction over the dispute; and (4) the former lawsuit must be pending in a court having personal jurisdiction over the parties.

*Id.* However, our supreme court has recognized an additional limitation on the applicability of the prior suit pending doctrine. *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d 618, 623 n.5 (Tenn. 2008). The doctrine "is inapplicable when the prior lawsuit has been dismissed or discontinued." *Id.* (citing *Walker v. Vandiver*, 133 Tenn. 423, 181 S.W. 310, 311 (1915)). "In other words, the prior lawsuit must continue to be 'pending' in order for a subsequent lawsuit to warrant dismissal." *Id.* For instance, in *Reddy*, 428 S.W.3d at 798, our supreme court concluded that the entry of an order voluntarily dismissing the previous action rendered moot the appellant's argument regarding the doctrine of prior suit pending. The court recognized that "dismissal of a prior suit before the trial of a subsequent suit obviates the defense of prior suit pending." *Id.* (citing *Walker*, 181 S.W.3d at 311). *See also Lewis v. Muchmore*, 26 S.W.3d 632, 637 (Tenn. Ct. App. 2000) (noting that the appellants could no longer avail themselves of the prior suit pending doctrine due to a nonsuit of the other action); *Roy v. Diamond*, 16 S.W.3d 783, 790 (Tenn. Ct. App. 1999) ("The dismissal of the first action prior to the trial of the second action was sufficient to avoid any technical problems relating to the doctrine of prior suit pending."). The trial court found (and the parties do not dispute) that US Bank nonsuited its detainer action prior to the trial in this case.[3] Thus, by the time of trial, the

---

[3]We recognize that the trial court found the prior suit pending doctrine inapplicable because the two detainer actions involved different parties. However, the doctrine can apply if the two lawsuits are between the same parties *or their privies*. *West*, 256 S.W.3d at 623 n.4 ("the doctrine of prior suit pending may also be applicable when a party in a subsequent lawsuit is the privy of a party in the former lawsuit"). The trial court did not analyze the issue of privity. We conclude that the dismissal of the first detainer action is determinative and do not reach the "same party" issue that the trial court addressed. This Court can affirm the trial court even if it reached the correct result for the wrong reason. *Torres v. Bridgestone/Firestone N. Am. Tire, LLC*, 498 S.W.3d 565, 577 (Tenn. Ct. App. 2016). Some courts refer to this as the "tipsy coachman" doctrine." *See, e.g.*, *State v. Diaz de la Portilla*, 177 So.3d 965, 974 (Fla. 2015) (describing "the tipsy coachman doctrine" permitting a reviewing court to affirm the decision of a lower court that reaches the right result for the wrong reason).

> The use of that moniker stems from a 19th century Georgia case, *Lee v. Porter*, 63 Ga. 345, 346 (1879), in which the Georgia Supreme Court explained:
>
> "It not infrequently happens that a judgment is affirmed upon a theory of

same claims were not being asserted against Mr. and Mrs. Biles in two different cases.

Although Mr. and Mrs. Biles do not raise any issue on appeal regarding this fact, we note that the trial court's order in this case states that "counter-claims against US Bank" remained pending in the first action after US Bank's nonsuit. This does complicate our analysis of the prior suit pending issue somewhat. However, without some evidence to suggest the nature of the "counter-claims" asserted by Mr. and Mrs. Biles, we cannot determine whether the prior suit involves "identical subject matter" when compared to this suit. *See Reddy*, 428 S.W.3d at 797 n.2 (listing the elements of the defense of prior suit pending). Consequently, the defense of prior suit pending was not sufficiently proven, and we must conclude that the prior suit does not bar this detainer action. *See, e.g.*, *Hampton v. Tenn. Truck Sales, Inc.*, 993 S.W.2d 643, 643 (Tenn. Ct. App. 1999) (reversing a finding of prior suit pending because the record did not include evidence from which we could conclude that the same issues were pending in the prior case).

## H.    Claim-Splitting Doctrine

Finally, Mr. and Mrs. Biles assert that US Bank's detainer action and Ms. Roby's detainer action "split the same cause of action" and therefore Ms. Roby's claim was barred by the claim-splitting doctrine. The prohibition against splitting an indivisible cause of action is a logical extension of the principles underlying the doctrine of res judicata; it shields a defendant from a multiplicity of suits. *Utley v. Cullum*, No. 01A01-9604-CV-00164, 1997 WL 122797, at *3 (Tenn. Ct. App. Mar. 19, 1997). That concern is not present here due to the nonsuit of US Bank's detainer action. *See Herff Motor Co. v. Seewald*, 172 S.W.2d 820, 820-21 (Tenn. 1943) (concluding that the defendant was not entitled to dismissal for impermissible "splitting of the cause of action" when the plaintiff

---

the case which did not occur to the court that rendered it, or which did occur and was expressly repudiated. The human mind is so constituted that in many instances it *finds the truth* when wholly unable to *find the way* that leads to it."

(Emphasis [in] original.) The Georgia Supreme Court then invoked the following verse by Oliver Goldsmith:

"'[T]he pupil of impulse, it forc'd him along,
His conduct still right, with his argument wrong;
Still aiming at honor, yet fearing to roam,
The coachman was tipsy, the chariot drove home.'"

63 Ga. at 346.

*Pavilion Dev., L.L.C. v. JBJ P'ship*, 979 So. 2d 24, 44-45 (Ala. 2007) (Murdock, J., concurring).

nonsuited the other suits).  This issue has no merit.

## V. CONCLUSION

For the aforementioned reasons, we affirm the circuit court's order in favor of Ms. Roby in all respects.  Costs of this appeal are taxed to the appellants, Alfonzia and Tonya Biles, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE